Joseph E. Abernathy, Sr., Defendant-Appellant, v. People of the State of Illinois, Plaintiff-Appellee.

Gen. No. 68–120.

April 10, 1970.

Robert F. Godfrey, of East St. Louis, for appellant.

Robert H. Rice, State's Attorney of St. Clair County, of Belleville (John M. Karns, Jr., Assistant State's Attorney, of counsel), for appellee.

REARDON, J.

On October 3, 1968, a trial jury in St. Clair County, Illinois, convicted the defendant, Joseph E. Abernathy, Sr., of murder. Thereafter, the trial court ruled adversely

to the defendant on his post-trial motion, and after a hearing in mitigation and aggravation sentenced the defendant to the Illinois State Penitentiary for a term of not less than 99 years and not more than 100 years.

From this verdict and finding and the order denying a new trial the defendant appeals to this Court. In support of his position the defendant contends:

1. That his guilt was not established by proof beyond a reasonable doubt, and
2. That there was immaterial and irrelevant evidence allowed to be introduced at the trial, which unfairly prejudiced him, and
3. That the final argument of the State's Attorney contained misstatements as to the law applicable to the case to which the defendant unsuccessfully objected.

The record in this case discloses that on the evening of May 29, 1968, John Elliot Delk and his wife, Barbara, returned to their home in Centerville, near East St. Louis, Illinois, accompanied by her children, Theresa Sue Powell, age 10; Kevin Michael Powell, age 9; and Michelle Lynn Powell, age 7. The family retired but were still awake when in response to a knock at the door, John Elliot Delk opened it and said, "Can I help you, Sir?" or "Yes, Sir, can I help you?" A voice answered, "You young punk." Delk then closed the door and locked it and then a shot was heard. Mrs. Barbara Delk asked her husband if he was hurt and although he answered in the negative, he fell over, and then a second shot was fired. Mrs. Barbara Delk testified that she recognized the voice of the defendant and that she saw the doorknob turn and then saw the face of the defendant as he peered through the window of the door. She testified further that she said to the defendant, "Joe, go home. You will wake the children." She testified that the defendant

266

looked at her and then shot out the electric light which was burning on the front porch of the residence and which had illuminated his face at the door window. Mrs. Barbara Delk described her acquaintance with the defendant as a neighbor (two houses apart) for seven years, and how her children, including her daughter, Theresa, played with the children of the defendant. Mrs. Barbara Delk's recognition of the face at the window in the door was supported by her daughter, Theresa, who testified that from her position in the upper bunk of a bunk bed, she could see the defendant through the window in the door.

The evidence of the prosecution discloses that on a day preceding the shooting, an altercation took place involving John Elliot Delk and the defendant's son, Joseph Abernathy, Jr. John Elliot Delk had been incorrectly informed that young Abernathy had driven a car which struck his (Delk's) son. In the argument that ensued, John Elliot Delk struck young Abernathy. Young Abernathy told his mother of the incident, but testified he did not tell his father. The defendant's wife testified that she knew about this misunderstanding, but did not tell her husband anything about this. The defendant testified that he knew nothing about it until after his arrest.

The defendant denied that he had shot John Elliot Delk and testified that on the date of the shooting he had been in Springfield, Illinois, and returned home about 9:00 p. m., and did not leave his home thereafter until his arrest at about midnight. His alibi is corroborated by the testimony of his wife and son-in-law, each of whom claimed to be present in defendant's home the entire evening when the shooting occurred. The defendant testified that he was not well acquainted with Mrs. Delk's family and that he had not lived two houses away from her family. However, the defendant's wife testified that they lived 200–250 feet apart for several years.

The prosecution in rebuttal offered evidence that on the night of the shooting the defendant and his wife were drinking in a tavern. This testimony was denied by the defendant.

It is the duty of the People to prove beyond a reasonable doubt that the defendant was guilty of the crime as charged. In making that proof and to sustain a conviction, the identification of the defendant must be established. Courts of review must peruse the testimony in the case to make certain that this has been done. To make such determination it is necessary that the Court consider with all other attendant circumstances the evidence bearing on the question of whether the witnesses had an adequate opportunity to make a definite identification. Mrs. Delk identified the defendant's voice and stated that she recognized the defendant's face when she looked through the window of the door. Her testimony remained unshaken, although she was closely questioned. The identification of the defendant by the victim's daughter, Theresa, was equally positive. The fact that the testimony is contradicted by the defendant and his witnesses does not of itself destroy the identification. In making this determination all of the evidence must be considered. The jury, sitting as the trier of the facts, must judge the credibility of the witness and may, if they so conclude, accept the testimony of the victim's wife and daughter to the complete exclusion of the testimony of the defendant and his witnesses. (See People v. Solomon, 24 Ill2d 586, 182 NE2d 736 (1962); People v. Prochut, 27 Ill2d 298, 189 NE2d 290 (1963); People v. Donald, 29 Ill2d 283, 194 NE2d 227 (1963).) The identification of the defendant was sufficient to support a conviction and we, therefore, conclude that the State has sustained its burden of proof.

The defendant also urges that error was committed by the trial court in receiving evidence of a totally unrelated incident occurring the night before the shoot-

ing, involving John Elliot Delk and the defendant's son, Joseph Abernathy, Jr. In support of this position the defendant cites People v. Simmons, 274 Ill 528. This case does not support the defendant's position. The evidence submitted here was purely circumstantial and the jury was entitled to draw reasonable inferences and intendments from that evidence. Events which may be deemed to explain the reason for the commission of the crime are admissible and Courts will permit the introduction of such evidence as an aid to the understanding of the jury. Evidence of the nature objected to cannot be established through facts and circumstances of which the accused had no knowledge, but again this rule is limited by the fact that actual knowledge need not be shown when it appears that there was opportunity to be informed. This is a question of fact to be determined by the jury. Wharton's Criminal Evidence, Volume 1, paragraph 172, page 335. Knowledge of the events occurring the night before was in the possession of defendant's son and wife and a reasonable intendment from that evidence is that the event was probably known to the defendant. The probability of defendant's knowing makes his knowledge of the incident a question of fact for the jury. Wigmore, Volume 2, Third Edition, § 389, page 328.

■ Defendant's second objection relates to the failure of the police authorities to take the defendant to the hospital so that he could be identified by the victim. The defendant argues that the reason for such failure was that the prosecution knew that if the victim failed to identify the defendant, it would be necessary to submit this information to the defendant, since it would be evidence favorable to him. The prosecution argues that the identification was complete and that exhibiting the defendant to the victim was unnecessary. This facet of the case was fully argued to the jury and it can only be concluded that the jury did not accept defendant's position as valid. We find no error.

269

■ The defendant charges that the final argument of the State's Attorney was improper. The State's Attorney responded to appellant's argument, which called attention to the failure of the police to take the defendant to the hospital for identification by the victim. In making that response the prosecution stated that if such a showing had been made, it would not be proper evidence and that the defendant would have objected to it. The defendant disagreed and contended that it was an improper statement of the law relating to dying declarations. This objection was overruled. Mrs. Delk, when called as a rebuttal witness, testified that all during the time her husband was in the hospital, he was in a critical condition. She was asked—"It was your understanding the visitors were to be of the immediate family only?" The defendant objected to this question and the Court sustained the objection. During the course of the testimony of the Chief of Police, Theodore Shamalin, the State attempted to elicit from him the reason why the defendant was not taken to the hospital to be viewed by Delk. Defendant's counsel objected and the Court sustained the objection. Responsibility for the failure to elicit such proof can hardly be charged to the prosecution. The objection of the defendant with respect to the State's Attorney's argument does not appear to be well taken.

At the hearing in mitigation and aggravation it was established that the defendant was fifty-one years of age and that he, shortly after being found guilty, walked away from the jail. The evidence militates against the idea of an intentional escape and supports the conclusion that the defendant was in a daze or was confused and left the jail premises with no intention of remaining away permanently.

■ The legislature of this State has provided that when sentences are imposed by courts they should be proportionate to the offense and should recognize the

philosophy of rehabilitation and should not be arbitrary or oppressive. Ill Rev Stats 1967, c 38, par 1-2(c), (d). Criminal sentencing involves a consideration of many factors. Among those are punishment, isolation, deterrence and rehabilitation. When a sentence by a trial court fixes a minimum term in excess of twenty years, parole eligibility remains at eleven years and three months. A sentencing judge cannot be expected to disregard the parole possibilities attached to his sentence, although this knowledge should not be his guiding criterion in imposing sentence. Parole and eligibility for parole are not the same thing. The sentence must take into account the offense and the circumstances under which it was committed and the prior good or bad conduct of the defendant. Sentencing is not an act of vengeance. Its justification can only be established when it is directed to the accomplishment of some goal. There are, unfortunately, in our society habitual offenders who are beyond the pale of redemptive treatment. However, it cannot be logically concluded from the record in this case that the defendant belongs in this category. The goal of the sentence may be a deterrence, or it may be an example to others, or it may seek rehabilitation of the offender to a law abiding society. Sentences must be tailored to fit the offender as well as the offense. In attaining the goals of deterrence, example or rehabilitation the sentence must be capable of being understood as contributing to some or all of those goals. All concerned need to know that the imposition of the sentence was done carefully and with a discernible purpose.

At the hearing in mitigation and aggravation the State made an oral offer of a nineteen-year-old plea of guilty to the offense of assault with intent to commit murder and a subsequent sentence on that plea of two years probation. The State indicated that this was the only plea or conviction that they were able to find on the de-

fendant's record. It is not certain from the record whether or not a plea was entered to a felony, although it was indicated that the offense to which the plea was made was assault with intent to commit murder, which was a felony in Illinois in 1949. However, it was suggested to the trial court by the State that the offense to which the defendant had pled in 1949 was the same as the present day offense of aggravated assault, which is a misdemeanor since it is not exclusively punishable by death or by a sentence to the penitentiary.

 An Appellate Court is vested with the power to reduce the punishment imposed by the trial court. Prudence, caution and common sense dictate that this power be used sparingly and only when necessary to rectify injustice. A review court must recognize that a trial judge ordinarily has the superior opportunity in the course of a trial and during the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed. (See People v. Taylor, 33 Ill2d 417, 211 NE2d 673.)

This Court, after full consideration of the evidence and the proceedings, is unable to countenance this sentence. What was intended by the sentence? Review courts should not, as the English cases say, "tinker" with sentences. However, when it appears that the sentence errs in principle, a review court must intervene and correct that sentence. In our view sentence reduction by an Appellate Court is an affirmative function to be employed when necessary to correct error and attain justice. We conclude that the spirit of our law is that a spread between the minimum and the maximum sentence should be provided, so as to permit the Parole and Pardon Board to release the defendant at the best time for all concerned. The 1968 approved draft of the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing, Alternatives and Principles provides:

"In order to preserve the principle of indeterminacy, the Court should not be authorized to impose a minimum sentence which exceeds one-third of the maximum sentence actually imposed."

This principle has been approved in People v. Jones, 92 Ill App2d 128, 235 NE2d 379. We do not believe that Courts are or should be bound to this mathematical formula, but we would as Justice Craven did in People v. Scott, 253 NE2d 553, view it as—"A guide and not as a hard and fast rule."

When a trial court imposes a sentence with a minimum of 99 years and a maximum of 100 years, the reasons for such a sentence must be discernible from the record. Indeterminate sentencing can only function when sentences are imposed that give consideration to the principles of indeterminacy. This Court cannot lay down any rule that would be applicable generally to criminal cases as to the required spread between a minimum and a maximum sentence. However, this is not to say that a substantial spread should not be provided. This unexplained sentence, not being in accord with the principles surrounding the imposition of indeterminate sentence, is, therefore, set aside.

 Pursuant to former section 121–9 of the Code of Criminal Procedure of 1963, now Rule 615 of the Supreme Court Rules (Ill Rev Stats 1969, c 110A, par 615), the minimum sentence in this case is reduced to twenty years and the maximum sentence is hereby fixed at thirty-five years. With the sentence thus modified the judgment of the Circuit Court of St. Clair County is affirmed.

Sentence modified; judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.