## PEOPLE v FLEMING

## PEOPLE v CALVIN

Docket Nos. 76467, 76468. Argued November 12, 1986 (Calendar No. 8). Decided August 4, 1987.

> Franklin D. Fleming and Willie L. Calvin pled guilty in the Oakland Circuit Court, James S. Thorburn, J., of four counts of armed robbery. Additionally, Calvin pled guilty of one count of second-degree criminal sexual conduct and Fleming of two. At the time of sentencing, the court departed from the sentencing guidelines. Instead of stating all the reasons for departure on the record, the court indicated its reasons for departure on each defendant's sentencing information report. In addition, the court indicated that it was enhancing the sentences on the basis of the "good time" and early release statutes. The Court of Appeals, ALLEN, P.J., and J. H. GILLIS and GIOVAN, JJ., affirmed the defendants' convictions, but remanded the case for resentencing in an opinion per curiam, holding that the trial court was required to state its reasons for its departure from the sentencing guidelines on the record and that merely placing its reasons on a sentencing information report, and filing the form in the court file, without informing the defendant of the reasons for the departure or allowing the defendant to object to errors of fact or the use of impermissible factors in enhancing the sentence, is insufficient. The Court also questioned the trial court's consideration of good-time credits and the early release provisions of the Prison Overcrowding Act as justification for enhancing the sentences (Docket Nos. 78006, 78345). The people appeal.

> In an opinion by Justice CAVANAGH, joined by Chief Justice RILEY and Justices LEVIN and ARCHER, the Supreme Court *held:*

> Reasons for departure from the recommended sentencing

REFERENCES

Am Jur 2d, Criminal Law, §§ 525 *et seq.,* 580 *et seq.*

Withdrawal, forfeiture, modification, or denial of good-time allowance to prisoner. 95 ALR2d 1265.

See also the annotations in the Index to Annotations under Sentence and Punishment.

guidelines must be articulated by a trial court at the time of sentencing on the record and placed on the sentencing information report. The possibility of early release by virtue of the Prison Overcrowding Emergency Powers Act and good-time credits or disciplinary credits may not be used to enhance a defendant's sentence.

1. A trial court is required to articulate on the record at the time of sentencing its reasons for departing from the sentencing guidelines in order to minimize the risk that the sentencing judge might rely on misinformation or on inaccuracies in the presentence report and to facilitate appellate review by affording the defendant an opportunity to answer and explain at the time of sentencing. In this case, the trial court's error in failing to articulate on the record its first reason for departure, that the defendants admitted first-degree criminal sexual conduct, was harmless. The record shows that the defendants had notice from the victims' testimony at the preliminary examination and from the presentence report that the victims claimed penetration and that the defendants did not challenge the victims' or probation officer's version of the crime. Correction of the error is requested on remand.

2. A trial court may not consider the possibility of early release under the Prison Overcrowding Emergency Powers Act as a factor in determining a defendant's sentence. Sentences must be tailored individually both to the particular circumstances of a case and to the offender. The possible reduction of an inmate's minimum sentence due to prison overcrowding is unrelated either to the individual defendant or the particular circumstances surrounding a case. Only complete and accurate information may be considered in imposing sentence. Consideration of possible subsequent reductions in a sentence amounts to speculation.

3. Statutory credits are applied to judicially imposed minimum sentences to reduce the time a defendant must spend in prison. Just as early-release considerations may not be used to enhance a defendant's sentence, enhancement of a sentence on the basis of anticipated good-time reductions is also improper. Enhancement on the basis of good-time reductions gives rise to basic unfairness in that similar offenders committing similar offenses may receive dissimilar sentences.

Affirmed and remanded for resentencing.

Justice BOYLE, joined by Justice BRICKLEY, concurring in part and dissenting in part, stated that while a court, in imposing a sentence, may not consider as a factor the possibility of a prisoner's early release under the Prison Overcrowding Emer-

gency Powers Act, consideration of early release as a result of disciplinary credits is not inappropriate. Specific disciplinary credits for each month served in prison are mandatory. They may be lost only upon a finding of major misconduct and only for the month in which the misconduct was committed. There is no prejudice in assuming that a defendant will be eligible for parole on a date that would result from the automatic application of good-time credit. Unlike early release under the OEPA, release pursuant to mandatory disciplinary credits is within the defendant's control. The mandatory nature of the credits makes the potential for early release a virtual certainty.

Sentences are to be tailored to the particular circumstances of a case and to the offender so as to balance society's need for protection and its interest in maximizing the offender's rehabilitation. Because good-time credits will affect the time a defendant actually will serve, its consideration should be permitted in formulating a sentence that will meet society's interest.

Justice GRIFFIN took no part in the decision of these cases.

142 Mich App 119; 369 NW2d 499 (1985) affirmed.

1. CRIMINAL LAW — SENTENCING GUIDELINES — ARTICULATION ON RECORD.

Reasons for departure from the recommended sentencing guidelines must be articulated by a trial court at the time of sentencing on the record and placed on the sentencing information report (Administrative Order No. 1984-1).

2. CRIMINAL LAW — SENTENCE ENHANCEMENT — EARLY RELEASE — STATUTORY CREDITS.

The possibility of early release by virtue of the Prison Overcrowding Emergency Powers Act and good-time credits and disciplinary credits may not be used to enhance a defendant's sentence (MCL 800.33, 800.71 *et seq.;* MSA 28.1403, 28.1437[1] *et seq.,* repealed by 1987 PA 100, 101).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Richard H. Browne,* Assistant Prosecuting Attorney, for the people.

*Flora I. Newblatt* for defendant Fleming.

*Patricia F. Donaldson* for defendant Calvin.

CAVANAGH, J. The issue in the present case is whether a sentencing judge must state all reasons for departure from the sentencing guidelines on the record at the time of sentencing. We affirm the finding of the Court of Appeals that failure to state the reasons for departure from the guidelines on the record at the time of sentencing contravenes this Court's Administrative Order No. 1984-1 and this Court's decision in *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983). In addition, it is improper for a judge to enhance a defendant's sentence on the basis of the early release or "good time" statutes.

## I. FACTS

Defendants Fleming and Calvin were charged with four counts of armed robbery,[1] three counts of first-degree criminal sexual conduct,[2] four counts of kidnapping,[3] one count of second-degree criminal sexual conduct,[4] and one count of assault with intent to do great bodily harm less than murder.[5] Both pled guilty to four counts of armed robbery. Defendant Calvin also pled guilty to one count of second-degree CSC and defendant Fleming pled guilty to two counts of second-degree CSC. At sentencing, the judge departed from the guidelines recommended sentences on the basis of defendants' prior records.

> As to Willie Lee Calvin—the Court is of the opinion as a preface as to both of you, your prior records are not good but they were not crimes of the seriousness of this nature. They were not

---

[1] MCL 750.599; MSA 28.797.

[2] MCL 750.520b; MSA 28.788(2).

[3] MCL 750.349; MSA 28.581.

[4] MCL 750.520c; MSA 28.788(3).

[5] MCL 750.84; MSA 28.279.

assaultive in nature. The Court has taken that into consideration. As to the both of you as to the charge of criminal sexual conduct in the second degree, the Court is going to give each of you a minimum sentence of 72 months and a maximum sentence of 180 months. On both crimes, the armed robbery and the criminal sexual conduct in the second degree, the Court is going to give you credit for county jail time in the amount of 156 days on your minimum and maximum sentences.

Now, as to the armed robbery, the Court is going to sentence you to a minimum term of 17 years and a maximum term of 40 years, receiving the same jail-time credit you did on the other crime.

That is the sentence of the Court.

Following the sentencing, the judge attached the following list of reasons for deviation from the guidelines to each sentencing information report (SIR).

1. The Defendant[s] [were] literally guilty of first degree criminal sexual conduct in that [they] admitted penetration.

2. The psychological report which was submitted to the court by counsel for the Defendant, a copy of which is attached hereto and made a part hereof as well as the presentence investigation report, convinces the court that any release within the guidelines prior to the expected release date will result in further damages and injuries to future victims.

3. The court finds that as a matter of fact the Defendant has no true regret.

4. The court finds that this Defendant ejected the four female victims out of the car in the late hours of October 18, 1983, in a nude condition exposing them to the additional threat of possible serious illness or death.

5. The court finds that the Defendant threatened to kill the victims unless they complied with his demands.

6. Based on the statute which awards disciplinary credit reductions of 84 days per year, the Defendant would only serve 13 years of incarceration (it is a rare, almost non-existent instance when an inmate does not receive 100% of his good time credit); further, the Emergency Powers Act has come into effect in the last two years six times, each time giving further 90 days reductions. The best estimate that this Judge can make as to the length of time that this 17 year minimum sentence will provide for is 7 years. In light of the age of the Defendant, the court is of the opinion that to protect society he should spend a minimum of 10 years in prison. Because of the uncertainty of the Emergency Powers Act and the slight uncertainty as to Defendant's good time credits, the Court has resolved these differences in favor of the Defendant to result in a probable incarceration of 7 years.

7. The presentence investigation report was rendered at the request of the Defendant. The Department of Corrections through three members of the sentencing panel recommended a minimum sentence of 20 years and a maximum sentence of 60 years. Although the prosecutor dismissed charges and reductions were agreed to, the facts admitted in the presentence investigation report constitute all the elements of first degree criminal sexual conduct. The recommendation of the Department of Corrections was given consideration.

It is the recommendation of this court that the Defendant receive psychiatric and psychological treatment while incarcerated. This is a recommendation which has little validity in light of the fact that practically no such treatment is furnished by the Department of Corrections.

The Court of Appeals affirmed defendants' convictions, but remanded the cases for resentencing.[6]

At the time these sentences were imposed, the

---

[6] 142 Mich App 119, 122-124; 369 NW2d 499 (1985).

trial court was required to state its reasons for
imposing sentence on the record and, in the event
of a departure from the recommended minimum
range contained in the Sentencing Guidelines
Manual, was required to state its reasons for
departure on the record and on the Sentencing
Information Report. *People v Coles,* 417 Mich 523;
339 NW2d 440 (1983); Supreme Court Administra-
tive Order No. 1984-1, 418 Mich lxxx. The tran-
script of the sentencing proceeding reveals that
the trial court made a brief reference to each of
the defendant's prior records before imposing sen-
tence. No other explanation or reason for the
sentences was given. However, the court files indi-
cate that on March 22, 1984, the day *after* imposi-
tion of sentence, copies of the sentencing informa-
tion reports prepared for both offenses, along with
a statement of reasons for deviating from the
guidelines for the offense of armed robbery, were
mailed to each defense attorney. There is no indi-
cation that the defendants were individually in-
formed by the court of the reasons for departure.

\* \* \*

The Sentencing Guidelines, Departure Policy, Ch
27, ¶ 3, provides in part: "Departure reasons *must
be placed on the record* and on the Sentencing
Information Report (SIR)." (Emphasis added.) Ad-
ministrative Order 1984-1 also states that "[t]he
judge may depart from the recommended mini-
mum range for the reasons, *and in the manner,*
prescribed by the guidelines." (Emphasis added.)
We find it clear that the judge must state on the
record reasons justifying the departure from the
guideline range. To this extent, we disagree with
the panel in *People v Good,* 141 Mich App 351; 367
NW2d 863 (1985), that it is sufficient for the sen-
tencing judge to state the reasons for departure on
the SIR and to file a copy of the SIR with the court
record. Such action, which places the reasons *in*
the court file record, fails to satisfy the require-
ment that the reasons be *on* the record.

We find support for this conclusion in *People v
Coles, supra,* pp 549-550, where the Court, quoting
from *United States v Brown,* 479 F2d 1170 (CA 2,

1973), first set forth the requirement for articulation of reasons in support of the sentence imposed. Two of the reasons mentioned by the *Brown* Court are especially relevant to the present situation:

"It would also promote fairness by minimizing the risk that the sentencing judge might rely on misinformation or on inaccuracies in the presentence report. . . . If a misapprehension on the court's part were disclosed, the defendant and his counsel would then have the opportunity to answer and explain, pointing out the error." 479 F2d 1172-1173.

We can see no reason why those justifications should not apply to the requirement set forth in the guidelines concerning the judge's statement of reasons for departure from the guidelines. Under *Coles* the trial judge is required to indicate the criteria considered in imposing sentence and the reasons which support the court's decision regarding the nature and length of punishment. *Coles, supra,* p 550. To some extent, it is probable that those reasons will be of a more general character than the reasons which justify a departure from the recommended minimum sentence range under the guidelines. Although departures are expected and encouraged, the justifications for the departure should be specific. Sentencing Guidelines Manual, Departure Policy, Ch 27.

One of the purposes of both the guidelines and the *Coles* articulation requirement is to facilitate appellate review of sentences. In order to achieve this goal, both statements should be made at the time of sentencing. Then, if there are any factual inaccuracies, an immediate response can be made. While a single statement of reasons in support of a particular sentence may satisfy both *Coles* and the guidelines, that situation is not presented in this case. Here, the defendants' claim of error is not simply one of a technical omission but includes the claim that the judge based his departure from the guidelines on erroneous and inaccurate information. Because the judge's statement supporting the departure from the guidelines was not made at

sentencing, but was mailed some time later, neither defendants nor their counsel had an opportunity to point out or explain the errors.

The Court of Appeals also questioned the sentencing judge's consideration of good-time credits and early release provisions established by the Legislature.

As an additional basis for its departure from the guidelines, the trial court referred to the fact that both the granting of disciplinary credits (MCL 800.33; MSA 28.1403) and the application of the provisions of the Prison Overcrowding Emergency Powers Act (MCL 800.71 *et seq.;* MSA 28.1437[1] *et seq.*) could reduce the length of time actually served on the sentences. In determining the appropriate sentence, the trial court is required to evaluate and balance many factors. The end result of the discretionary process is a sentence tailored to both the circumstances of the offense and the offender. *People v McFarlin,* 389 Mich 557; 208 NW2d 504 (1973).

The sentencing court does not operate in a vacuum without consideration or concern for the actual effect of the sentence. While the court should be mindful of the ultimate effect of its sentence, we are troubled by the utilization of the legislatively authorized provisions for sentence credit or early release as a justification for increasing or augmenting a sentence. In the present case, the trial judge imposed the 17-year minimum sentence in anticipation, and with the expectation, that the defendants would serve only seven years. While the disciplinary credits may seem to be a "given" factor, the use of the early release provisions is not. It is only speculation and conjecture that the 90-day early release provision will continue to be implemented in the future and that it will be utilized with the same frequency and regularity. These computations served as one justification for the departure from the guidelines. Even

though the trial judge stated that he resolved the
uncertainties of those programs in defendants'
favor, he imposed the 17-year minimum term in
the belief that defendants would actually serve
only seven years of imprisonment. [*Id.*, pp 125-
126.]

## II. ANALYSIS

The need for articulation on the record at sen-
tencing is clearly illustrated by this case. Due to
the judge's failure to state the reasons for his
departure from the guidelines during sentencing,
defendants were unable to object to any errors in
fact or to the use of impermissible factors in
enhancing defendants' sentences.

### A. ADMISSIONS OF GUILT

The first reason for departure on the list at-
tached to the SIR indicates that the defendants
were guilty of first-degree criminal sexual conduct
because they admitted penetration. The claim that
defendants admitted penetration is repeated in the
seventh reason for departure. This is incorrect.
Defendants did not testify at the preliminary hear-
ing, and did not admit to first-degree criminal
sexual conduct at the plea hearing or in the pre-
sentence report.[7] Had the judge stated at sentenc-
ing that defendants' admitted guilt to a greater
offense was a factor in enhancing their sentences,
defendants could have made a timely objection and
corrected the judge's error.

A sentencing judge may not make an indepen-
dent finding of guilt on some other charge, but he

[7] Defendant Fleming told the presentence investigator that he was
drunk, but didn't rape anyone. Defendant Calvin told the investigator
that he and Fleming told the victims to get out of their car, to take
off their pants and run. He and Fleming then jumped in the car and
drove off.

may consider the defendant's admissions. *People v Grimmett*, 388 Mich 590, 608; 202 NW2d 278 (1972). Thus, where a defendant has made admissions at a plea hearing that clearly establish his commission of a higher offense, the court may use the actual facts as a basis for departure from the guidelines. Also, where there is record support that a greater offense has been committed by a defendant, it may constitute an aggravating factor to be considered by the judge at sentencing without an admission of guilt by defendant.

A presentence report must be prepared for the trial judge's review before the judge sentences a defendant convicted of a felony, MCL 771.14(1); MSA 28.1144(1). This report may include information about a defendant that was not admissible nor admitted at defendant's trial or plea including hearsay, character evidence, prior convictions or alleged criminal activity for which defendant was not charged or convicted, and the victims' version of the offense.

A defendant has the opportunity at sentencing to challenge any information in the presentence report on the basis of accuracy and relevancy. The court may order an adjournment in order to permit the parties to prepare or respond to a challenge. If the court finds that the challenged information is inaccurate or irrelevant, it must so state on the record. The inaccurate information is struck from the presentence report and is not considered by the judge in sentencing the defendant. MCL 771.14(5); MSA 28.1144(5).

Defendants Calvin and Fleming did not challenge the victims' versions or the probation officer's version of the crime in the presentence report, both of which alleged penetration. Moreover, the victims had testified at the preliminary hearing that defendants had penetrated the victims.

While the trial judge failed to state his reason for departure at sentencing, it is clear that defendants had notice that the victims claimed penetration from the victims' preliminary examination testimony and from the presentence report. For this reason, we find harmless the error in the judge's failure to articulate his first reason for departure on the record. As we are remanding for resentencing on the next two issues, however, we direct the trial judge to correct this error upon remand.

### B. EARLY RELEASE

The Prison Overcrowding Emergency Powers Act (OEPA)[8] was enacted in 1981 in response to crisis conditions in Michigan prisons.[9] It was re-

---

[8] MCL 800.71 et seq.; MSA 28.1437(1) et seq.

[9] Report of the Michigan Legislative/Executive Task Force on Prison Overcrowding (June 24, 1980), Introduction:

Since 1975, Michigan's prison system has been continuously overcrowded by as many as 2,000 prisoners. As of June 6, 1980, the Michigan Department of Corrections was housing 15,095 prisoners, 1,628 more than the system is designed to house. The state's prison population has almost doubled since 1973 and projections indicate that this rate of growth will only increase during the next several years. Unless this trend can be halted, Michigan will be facing a prison population in excess of 19,000 by the mid-1990's.

Despite efforts to expand the capacity of our prison system, we are no closer to a resolution of the crisis than we were in 1975. Since 1970, the State has added more than 3,600 beds to the capacity of its system but it is still overcrowded by some 1,700 prisoners. In response to this pressure, the Department of Corrections has been forced to provide temporary bedspace in the form of modular units, conversions of non-housing areas, and the use of dormitory settings. Not only have these efforts provided the much needed relief, but they have created management problems and have deprived the institutions of vital programming and treatment areas.

Michigan is in the midst of a crisis in its prison system, as the potential for major disruptions and/or federal court intervention increases. In recognition of this fact, Speaker of the

pealed by amendment in June, 1987.[10] The act authorized the Governor to declare a state of emergency whenever the prison population exceeds available bed space for thirty consecutive days.[11] The Director of the Department of Corrections must then have reduced the minimum terms of those prisoners who had established minimum terms by ninety days.[12] If the prison population remained over ninety-five percent of capacity, the director must have reduced sentences again.[13]

Prison overcrowding was found to lessen rehabilitation and to increase the dangers of prison riots and disruptions. Moreover, Michigan's failure to remedy the overcrowding would have allowed congressional authorization for the United States Department of Justice to initiate or intervene in litigation on behalf of Michigan prisoners.

> These [crowded] living conditions create a situation that invites judicial intervention—a situation occurring on a large scale across the country. In fact, as of April 1, 1980, 19 states were operating their prison systems wholly or partially under court order, and 13 others were facing litigation on the conditions of confinement. Virtually all of this judicial action has occurred since 1974. And, if the anticipated Congressional authorization for the

House Bobby D. Crim, Senate Majority Leader William Faust, and Governor Milliken convened the Joint Legislative/Executive Task Force on Prison Overcrowding on January 29, 1980 to examine the problem and formulate recommendations that would represent the most effective but cost-efficient response to this crisis. As a result of these deliberations, the Task Force presents the following recommendations, that it believes represents the most responsible course of action for this state to take in addressing the overcrowding crisis.

[10] 1987 PA 100 and 101 repeal all provisions of the OEPA except MCL 800.78; MSA 28.1437(8) concerning single and multiple occupancy rooms or cells.

[11] MCL 800.73; MSA 28.1437(3).

[12] MCL 800.74; MSA 28.1437(4).

[13] MCL 800.75; MSA 28.1437(5).

U.S. Justice Department to initiate or become involved in litigation on behalf of state inmates occurs, the instances of judicial intervention are likely to increase at a more rapid pace. A federal court order generally establishes the acceptable conditions that must be met by the state within a specified period of time, regardless of the costs involved or the ability of the state to meet those costs.[14]

This Court found the OEPA to be within the power granted in the constitution to the Legislature. *Oakland Co Prosecutor v Dep't of Corrections,* 411 Mich 183; 305 NW2d 515 (1981). The constitution gives the Legislature the power to provide for indeterminate sentences and for the detention and release of persons imprisoned under such sentences. Const 1963, art 4, § 45.

The Court of Appeals has held that a sentencing judge may not consider the possibility of a prisoner's early release under the OEPA as a factor in enhancing a sentence. *People v Lundy,* 145 Mich App 847; 378 NW2d 622 (1985); *People v Humble,* 146 Mich App 198; 379 NW2d 422 (1985). The rationale for limiting the sentencing judge's discretion is aptly explained in *People v Humble, supra,* p 201:

> Although trial courts are afforded wide discretion when imposing sentences within statutory limits, see MCL 769.1; MSA 28.1072, such discretion is not unlimited. See *People v Coles,* 417 Mich 523, 530-532; 339 NW2d 440 (1983). Sentences must be individually tailored to both the particular circumstances of the case and the offender.

---

[14] Task Force Report, n 9 *supra,* p 22. The Task Force also recommended sentencing reform by the statewide implementation of sentencing guidelines to reduce sentencing disparity, the passage of the Revised Criminal Code and the use of "good time credits" to relieve prison overcrowding. *Id.,* p 8, and Summary of Key Recommendations, pp ii and iii.

*People v Chapa,* 407 Mich 309, 311; 284 NW2d 340
(1979). The possible reduction of an inmate's mini-
mum sentence due to prison overcrowding, how-
ever, is unrelated to either the individual defen-
dant or the particular circumstances surrounding
his case. Further, in order to fulfill society's dual
goals of rehabilitation and protection, it is essen-
tial that courts consider only complete and accu-
rate information when imposing sentence. *People
v Triplett,* 407 Mich 510, 514; 287 NW2d 165
(1980); *People v Lee,* 391 Mich 618, 634-639; 218
NW2d 655 (1974). At the time of sentencing, how-
ever, a court cannot know but could only speculate
as to how many reductions, if any, would be issued
by the Governor during a defendant's prison stay.
We hold that sentencing courts may not consider
possible sentence reductions available under the
Prison Overcrowding Emergency Powers Act when
imposing sentence.

The unfairness of increasing a defendant's sen-
tence on the basis of speculation as to early re-
lease is readily apparent as the Governor declined
to invoke the act in recent years. Indeed, increas-
ing sentences in order to frustrate the purposes of
the OEPA could exacerbate the conditions OEPA was
designed to remedy. The possible litigation involv-
ing the federal government which the OEPA sought
to avoid is now underway in federal court.[15]

A sentencing judge may not consider the possi-
bility of early release under the OEPA as a factor in
determining a defendant's sentence.

### C. "GOOD TIME"/DISCIPLINARY CREDITS[16]

One of the reasons listed by the sentencing

_____

[15] *Knop v Johnson* (Docket No G84-651CA5) (a class action by
prisoners) and *United States v Michigan* (Docket No G84-63CA5) (a
suit by the federal government to hold Michigan in contempt for
failing to comply with an earlier consent decree) are both now
pending in federal district court in the Western District of Michigan.

[16] Sentence reductions given for good behavior were known as "good
time" until 1982. As a result of the passage of Proposal B of 1978,

judge to support his departure above the guideline range was the fact that good-time credits may be used to reduce a defendant's sentence.

> Based on the statute which awards disciplinary credit reductions of 84 days per year, the Defendant would only serve 13 years of incarceration (it is a rare, almost non-existent instance when an inmate does not receive 100% of his good time credit); further, the Emergency Powers Act has come into effect in the last two years six times, each time giving further 90 day reductions. *The best estimate that this Judge can make as to the length of time that this 17 year minimum sentence will provide for is 7 years.* In light of the age of the Defendant, the court is of the opinion that to protect society he should spend a minimum of 10 years in prison. *Because of the uncertainty of the Emergency Powers Act and the slight uncertainty as to Defendant's good time credits, the Court has resolved these differences in favor of the Defendant to result in a probable incarceration of 7 years.* [Emphasis added.][17]

### Disciplinary credits are provided by statute.

prisoners convicted of certain offenses were to serve the minimum sentence imposed by law with no reductions for good time, special good time, or special parole. MCL 791.233b; MSA 28.2303(3). The good-time law remained in effect for non-Proposal B offenders. Apparently good time continued to be deducted from the maximum sentences of Proposal B offenders.

The good-time statute was amended in 1982 to allow disciplinary credits for Proposal B offenders. 1982 PA 442. The statute was amended again in 1986 so that all prisoners who committed a crime on or after April 1, 1987, will receive disciplinary credits rather than good-time credits. 1986 PA 322. Certain crimes are still exempt from the statute. MCL 800.33(4); MSA 28.1403(4).

Although the Court recognizes that there is a distinction between good-time credits and disciplinary credits, we shall use the terms interchangeably to refer to sentence reductions based on MCL 800.33; MSA 28.1403.

[17] We disagree with the dissent's implication that age alone may be a proper reason for departure where defendant is in an age group with a high likelihood of recidivism. While age may be considered a mitigating or aggravating factor in terms of the individual defendant

MCL 800.33; MSA 28.1403. The disciplinary credits are applied to the judicially imposed minimum sentence to reduce the time a defendant must spend in prison. For instance, the statute provides for five days a month credit for the first and second years of a sentence, i.e., sixty days per year, up to fifteen days' credit per month from and including the twentieth year of a sentence, i.e., six months per year.

Disciplinary credits are automatically forfeited during any month in which a prisoner is found guilty of a major misconduct. However, any forfeiture is limited to the month in which the misconduct occurs and these credits may be restored. After December 30, 1982, the statute was amended to allow two more "special days" a month upon recommendation of the disciplinary credit committee and with the warden's consent.[18]

The prosecutor argues that any minimum sen-

and the circumstances of the particular crime, its consideration should be limited. Any predictions of a defendant's future behavior based on a status characteristic such as race, religion, gender, or age are suspect.

Neither the Michigan guidelines nor the proposed federal guidelines use age as a sentencing factor. A reasonable sentence may include a limited consideration of a defendant's age in terms of other permissible and relevant individual factors such as the absence or presence of a prior record.

Justice BOYLE also refers to a recent Citizens' Commission recommendation in support of her argument that courts should be permitted to factor in "early release" pursuant to the good-time statute. It should be noted that the commission merely suggested that the sentencing judge inform the defendant not only of the official minimum and maximum sentence, but also of the earliest possible release date so that all involved in the case would better understand the effect of the sentence.

[18] Both parties recognize the past practice of judges in consulting a good-time chart to determine an appropriate minimum sentence. This chart computed the minimum sentence a judge should give, e.g., ten years, in order for a defendant to serve the amount of time the judge thought proper, e.g., six years. Neither party claims that such charts are now available or in use to assure that a judge's computations accurately reflect the amount of time that should be added to a defendant's sentence today to counterbalance "good time" credit.

tence is subject to good-time reductions without regard to punishment, protection of society, reformation of the offender, or deterrence. He asserts the court's attempts to tailor an individual sentence for each defendant on the basis of the presentence report and the guidelines are frustrated by legislatively imposed sentence reductions that are concerned only with prison overcrowding. No assertion is made, however, nor could one be, that such reductions are constitutionally infirm or not subject to adjustment, revision, or repeal by the Legislature. Yet, it is argued that each judge should be allowed to correct this "perversion" of sentencing decisions by enhancing a defendant's sentence by the amount the judge estimates it will be decreased by "good time."

Much of the dissatisfaction with the use of good-time credits reflected in the prosecutor's brief is also apparent in recent Court of Appeals decisions. *People v Humble, supra; People v Lundy, supra.* The prosecutor may well be correct in arguing that the system does not operate as it should. However, the failure of the state to create and implement a successful corrections program should not distort the judiciary's sentencing responsibility.

It is apparent in the present case that the judge's sentence was based on his "guesstimate" of time reductions that defendant would receive under the OEPA and good-time statutes. We have found that early release under the OEPA may not be used as a factor in enhancing a defendant's sentence. We find that enhancing a defendant's sentence on the basis of anticipated good-time reductions is also improper.

The sentencing guidelines were established to achieve greater uniformity in the sentencing process while preserving judicial discretion. Thus, simi-

lar offenders committing similar offenses should not receive dissimilar sentences.[19] The sentencing court must use the guidelines when imposing a sentence for an offense included within the guidelines. Departure from the guidelines is permitted, however,[20] and the judge must give specific explanations for departure where there are special characteristics of the offense or offender necessitating a departure or where the judge believes the recommended ranges are inappropriate.[21]

Where the judge finds no special characteristics, he must provide a specific explanation of why the guidelines range does not reflect the sentencing practice of the state's trial judges.[22] This is necessary because the guidelines were developed by an advisory committee to reflect the past sentencing practices of Michigan judges.[23] If the prosecutor is correct in stating that trial judges traditionally factored "good time" into defendants' sentences, then this practice would be reflected in the presently recommended guidelines sentences.

The prosecutor argues that the guidelines are too lenient anyway. The Sentencing Guidelines Advisory Committee recognized that all judges would not concur with the recommended guidelines sentences and provided for departure. However, this Court requires that specific reasons for departure be placed on the record at sentencing as well as on the SIR.

Adding "good time" or disciplinary credits to a defendant's sentence also gives rise to basic unfairness. Similar offenders committing similar offenses may receive dissimilar sentences depending on the

---

[19] Sentencing Guidelines, Statement of Purpose.

[20] Administrative Order No. 1984-1, 418 Mich lxxx.

[21] Sentencing Guidelines, Departure Policy.

[22] Id.

[23] See n 19.

judge's decision to add on "good time" and the accuracy of the computations. In addition, if the present implementation of the good-time statute should be altered—for example, so that loss of good time for minor infractions is the rule rather than the exception—a defendant may be prejudiced.

It is clear that there is much concern on the part of the public, prosecutors, and judges over the good-time statute and its implementation by the Department of Corrections. Nonetheless, we again stress that the enactment of the good-time statute, like the OEPA, is not an illegal or extralegal measure designed to frustrate justice, but is within the power granted to the Legislature by the constitution. Const 1963, art 4, § 45. Each of these enactments represents a carefully considered judgment by coequal branches of government. Sentencing judges should not circumvent or nullify the act by taking away good-time credits in advance.[24]

---

[24] The use of "good time credits" was considered in the Task Force Report on Prison Overcrowding, n 9 *supra*, p 8, as part of the solution to overcrowding:

> The overcrowded conditions of our state prisons affirm the necessity for sentencing reform. During the past ten years, the average length of prison terms in this state has risen from 22 months to in excess of 32 months. This dramatic increase in sentence length, when coupled with the general increase in the absolute number of commitments to the state system, is directly responsible for the majority of the overcrowding we are now experiencing.
>
> Thus the recommendations within this section address the issue of sentencing. The first two recommendations directly address sentencing reform, while the last addresses good-time credits that are applied to the minimum and maximum sentences of convicted offenders.

We note the similarity in factoring the OEPA and "good time" into a defendant's sentence to circumventing the parole provisions of the "lifer law," MCL 791.234(4); MSA 28.2304(4), by sentencing defendants to a term of years that exceeds life and precludes parole. A sentence of one or more centuries in prison violates the spirit and

### III. CONCLUSION

In *People v Coles, supra,* p 549, this Court held that the trial court must articulate its reasons for imposing a sentence on the record at the time of sentencing in order to aid appellate review. The Sentencing Guidelines were created to deal with many of the issues raised in *Coles,* such as excessively severe or lenient sentences and disparate sentences for similar defendants who have committed similar crimes.[25] In order to evaluate the effectiveness of the guidelines in rectifying these problems, sentencing judges are required to articulate their reasons for departure from the recommended sentencing guidelines on the record at sentencing as well as on the SIR. Sentencing Guidelines, Departure Policy, Ch 27, ¶ 3.

The articulation required by *Coles* and the guidelines both serve to aid in appellate review of sentencing and to avoid injustice on the basis of error at sentencing. Only placing reasons for departure on the SIR following sentencing defeats the purpose of articulation on the record at the time of sentencing.

We hold that reasons for departure from the recommended sentencing guidelines must be articulated at sentencing and placed on the SIR. The possibility of earlier release by virtue of the OEPA and good-time credits or disciplinary credits may not be used to enhance a defendant's sentence.

Remanded for resentencing in accordance with this opinion.

intent of the indeterminate sentencing statutes. The Legislature has recognized that a defendant may be rehabilitated in prison and has vested in the parole board the power to release a rehabilitated prisoner once the minimum sentence has been served. MCL 791.231 *et seq.;* MSA 28.2301 *et seq.* Any changes in the parole provisions of the "lifer law" should be made by the Legislature, not the judiciary.

[25] The implementation of sentencing guidelines and "good time credits" were recommended to ease prison overcrowding. See n 13.

RILEY, C.J., and LEVIN and ARCHER, JJ., concurred with CAVANAGH, J.

BOYLE, J. (*concurring in part and dissenting in part*). I agree that pursuant to *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983), a trial judge is required to state all reasons for departure from the sentencing guidelines on the record at the time of sentencing. Articulation will serve to aid in appellate review of sentencing and to avoid injustice on the basis of error at sentencing. As the majority points out, however, both the failure to articulate on the record the reasons for a sentence and a sentence based on inaccurate information will result in remand for resentencing only where the error prejudices the defendant.

I also agree with the majority that a sentencing judge may not consider the possibility of a prisoner's early release under the Prison Overcrowding Emergency Powers Act (OEPA), MCL 800.71 *et seq.;* MSA 28.1437(1) *et seq.,* as a factor in enhancing a sentence.[1] The speculative nature of such a consideration introduces an element of inaccuracy into the sentence and results in unfair prejudice to the defendant. I write separately, however, because I disagree that early release because of disciplinary credits is an inappropriate consideration in determining a defendant's sentence, and because I wish to disassociate myself from the implicit premise of the majority opinion that Administrative Order No. 1984-1 furnishes a substantive basis for reversal of a sentence based on accurate information.[2]

---

[1] I note, however, that in n 24 of the majority opinion, the majority addresses the propriety of sentencing defendants to a term of years that exceeds life and precludes parole. Since this is not an issue in the present case, I find it inappropriate to address the issue at this time.

[2] Administrative Order No. 1984-1 imposes a responsibility on the trial judiciary authorized by this Court's power of superintending control. Whether and to what extent this Court has the authority to

I

The question is not whether the Legislature may reduce reasonable prison sentences and provide for the implementation of corrections programs. It undoubtedly has that power. The question, rather, is whether a sentencing judge may consider the automatic crediting of good time in determining an appropriate term of incarceration.

By statute, a disciplinary credit of five days per month for each month served in prison is mandatory. MCL 800.33(5); MSA 28.1403(5). Additional "special" disciplinary credits of two days per month may be awarded for good institutional conduct upon the recommendation of the disciplinary credit committee. *Id.* Accumulated credits are automatically deducted .from a prisoner's minimum and maximum sentence in order to determine the prisoner's presumptive parole eligibility and discharge dates. MCL 800.33(3); MSA 28.1403(3).[3]

Given their discretionary nature, "special" disciplinary credits are too speculative to be considered in a sentencing determination. However, the only speculative aspect of mandatory disciplinary credits which could work to a defendant's detriment is that on a finding of major misconduct a defendant may lose credit for the month in which the misconduct was committed. MCL 800.33(6); MSA 28.1403(6).

I perceive no prejudice in assuming that a defendant will be eligible for parole on the date at

establish guidelines as an independent basis for appellate review of a sentence which falls short of shocking the judicial conscience is an issue of considerable jurisprudential significance which was not briefed or argued here nor addressed in *People v Walker,* 428 Mich 261; 407 NW2d 367 (1987).

[3] Subsequent statutory amendments which would reduce good time may not be applied to a prisoner's sentence before the effective date of the amendment in view of the restraints on ex post facto laws. OAG, 1933-34, p 394 (November 20, 1933).

which his automatically credited good-time credit makes parole available.

Time cuts under the OEPA are speculative and not reasonably ascertainable by the trial judiciary. Parole under the "lifer" law is subject to the consent of the sentencing judge or successor judge. MCL 791.234(4)(b); MSA 28.2304(4)(b). In neither event has the judiciary any ground to object if the sentence served is not the sentence intended. Early release pursuant to disciplinary credits presents a different situation. These credits are automatically awarded to reduce the sentence and are not subject to divestiture. The mandatory nature of disciplinary credits makes the potential for early release a virtual certainty, which is subject to reduction only at the defendant's own hands.

Just as speculation injected into a sentencing creates an inaccuracy which may be inconsistent with due process of law, see *Townsend v Burke,* 334 US 736; 68 S Ct 1252; 92 L Ed 1690 (1948), judicial refusal to acknowledge the virtual certainty of early release creates a distortion of the sentencing process. As we have previously stated, the sentencing policy in Michigan requires that

> the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential. [*People v McFarlin,* 389 Mich 557, 574; 208 NW2d 504 (1973).]

Because it is indisputable that good-time credits will affect the amount of time that a defendant actually will serve, consideration of this factor is permissible in formulating a sentence which will meet society's interest. In answering this precise question, the Illinois Appellate Court of the Second District recently held:

In the absence of any authority to the contrary, we see no reason why a sentencing judge may not consider, as one factor, the realities of the sentencing law in fashioning a sentence which is reflective of both the seriousness of the offense and the defendant's rehabilitative potential. A sentencing judge does not act in a vacuum, nor can he be expected to disregard the possibility of good-time credit which is inherent in every sentence of imprisonment. (See *Abernathy v People* [1970], 123 Ill App 2d 263, 271, 259 NE2d 363.) While we recognize that good-time credit and eligibility for good-time credit are not the same thing, we nevertheless believe that a sentencing court may properly determine the minimum amount of actual incarceration which is appropriate in light of the seriousness of the offense and the history and character of the defendant. [*People v Torgeson,* 132 Ill App 3d 384, 389; 477 NE2d 244 (1985). See also *People v Smith,* 148 Ill App 3d 655; 499 NE2d 1038 (1986).]

The determination of an appropriate sentence is one of the most difficult and agonizing decisions that a trial judge must make. If it appears that incarceration is a necessity, resolving the length of the term involves an individualized assessment of the defendant's background, potential for rehabilitation, circumstances of the crime, and the protection of society. Under an indeterminate sentencing scheme, that *is* the trial court's sentencing responsibility, a responsibility for which the judge alone is politically accountable.

The operation of good-time credit to reduce a reasonable sentence, if not taken into account, leads to diminished public confidence in the judiciary and a feeling that the trial judiciary has betrayed the citizenry. One of the aims of Congress in enacting new sentencing law is "*honesty* in sentencing" (emphasis in original):

[Congress] sought to avoid the confusion and implicit deception that arises out of the present sentencing system which requires a judge to impose an indeterminate sentence that is automatically reduced in most cases by "good time" credits. [41 Crim L Rptr 3087, 3089.]

Indeed, in recognition of the fact that the sentence imposed by a court is frequently not the sentence served, the Citizens' Commission to Improve Michigan Courts recently made the following recommendation:

Too often, the judge or the victim is surprised to learn that the defendant has been released before completing the official minimum sentence. As we indicated earlier, the Michigan Supreme Court could do much to enhance public confidence in the integrity of the sentencing process if the Court would require each sentencing judge to inform the defendant of the earliest possible release date, as well as the official minimum and maximum sentence. The defendant, the victim, and the community would better understand the actual impact of the sentence, and the mystery surrounding early releases would be reduced. [Citizens' Commission to Improve Michigan Courts, Final Report and Recommendations, p 13.]

A rule of this Court prohibiting the consideration of early release pursuant to the good-time statute can only perpetuate public frustration to the detriment of the criminal justice system. If the trial judge understands the realities of the correction system, as the public no doubt presumes, there cannot be a satisfactory answer to the question why that reality is not taken into account in sentencing. A sentence must look to the offender's ultimate rehabilitation, but it must also bear a rational relationship to community values regarding the misconduct of the defendant.

II

There is no support in the record for the conclusion that disciplinary credits were factored into the sentencing guidelines so as to create a redundancy when that factor is used as a reason for departing from the guidelines.

In any event, it is my belief that a trial judge may consider the effect of disciplinary credits when fashioning a sentence pursuant to the factors in *People v Snow,* 386 Mich 586, 592; 194 NW2d 314 (1972).[4] In such a situation, if the sentence falls outside of the guidelines, the reasons for departure are those related to the considerations in *Snow,* not merely the effect of disciplinary credits. Such a departure cannot be unwarranted unless it fails appellate review for some reason other than consideration of disciplinary credits.

The majority also contends that adding good time to a defendant's sentence will result in disparity. However, in *In re Southard,* 298 Mich 75, 82; 298 NW 457 (1941), we observed that disparity has been built into the system by the people of this state. As this Court stated:

> The policy expressed by the people, in providing by constitutional amendment for an indeterminate sentence law, directed the legislature to adopt a flexible law and the courts to fit the punishment in the exercise of their discretion to the needs of the particular case. In no other way could the will of the people be carried into effect. A discretion must be exercised in order to have indeterminate sentences.

To be sure, indeterminate sentencing creates a

---

[4] These factors are: (1) the disciplining of the wrongdoer, (2) the protection of society, (3) the potential for reformation of the offender, and (4) the deterring of others from committing like offenses. See also *People v Coles, supra,* p 550.

possibility of arbitrary sentences within the broad discretion granted the trial judiciary. That possibility was the motivation for the sentencing guidelines project. However, even the sentencing guidelines which prescribe recommended ranges for a crime result in a degree of disparity. Hence, it is not disparity in general which is the perceived evil, but unjustified disparity resulting from such impermissible considerations as the race or the economic status of a defendant or the personal bias and attitude of an individual judge. *People v Coles, supra,* p 546. It is the unjustified disparities which "promote disrespect for the criminal justice system and resentment among prisoners, thus impairing their morale and motivation for rehabilitation." *Id.*

Where consideration of good-time credits is made in conjunction with other permissible considerations and pursuant to *Snow,* the disparity that results is justified as an effort to tailor the punishment to fit the offender and to permit optimum discretion in the parole authorities consistent with the defendant's threat to the community as perceived by the trial judge. See *People v Tanner,* 387 Mich 683, 694; 199 NW2d 202 (1972) (BRENNAN, J., dissenting).

The majority concludes that taking away good-time credits in advance will circumvent or nullify the act. In fact, the virtually automatic application of good-time credits has the effect of nullifying a part of the trial court's sentence. If the purpose of the good-time statute is to reward a defendant for good conduct, that purpose will continue to be served, even if the trial court takes good-time credits into account in determining the actual length of time the judge believes the defendant ought to be incarcerated. By its very nature, indeterminate sentencing requires the trial court to

exercise a degree of discretion in imposing a sentence. Consideration of good-time credits improves the accuracy of such an exercise of discretion and therefore does not constitute an invasion of the legislative prerogative to establish punishment for crimes. See *People v Coles, supra,* p 539.

Indeed, consideration of good time when fashioning a sentence will promote consistency between the Michigan Department of Corrections decision to release an offender and the trial court's determination of a defendant's dangerousness by insuring that a defendant will not be released before serving the minimum time thought to be necessary for the defendant's rehabilitation. Concern that similar offenders committing similar offenses may receive dissimilar sentences depending on the judge's decision to accurately factor good-time credits is met by observing that the "basic unfairness" in such a situation is not to the defendant who receives a sentence based on the reality of good-time credits, but to the people of the state who are deprived of a rational system of sentencing.[5]

III

In the case at bar, the trial court stated:

In light of the age of the Defendant, the court is of the opinion that to protect society he should spend a minimum of 10 years in prison. Because of the uncertainty of the Emergency Powers Act and the slight uncertainty as to Defendant's good time

---

[5] Although this Court has thus far declined to pass upon the issue, the general jurisdictional grant which justified sentence review at the behest of a defendant, MCL 600.212-600.223, 600.308; MSA 27A.212-27A.223, 27A.308, is theoretically sufficiently broad to permit prosecutors' appeals of sentences. In this connection, I note that although 81.6 percent of the judges sentence within the guidelines, *six* percent of the departures are below the suggested guidelines.

credits, the Court has resolved these differences in favor of the Defendant to result in a probable incarceration of 7 years.

I note that age is not a variable in the sentencing guidelines. However, the fact that age is not a variable surely does not mean it is not a permissible reason for departing from the guidelines in making the necessarily difficult determination of an appropriate sentence.[6] I agree that resentencing is necessary to the extent the sentences were based upon consideration of time-cuts pursuant to the OEPA and discretionary disciplinary credits. I maintain, however, that consideration of mandatory disciplinary credits is proper in order to accurately tailor the punishment to the offender.

It is not the state's failure to create and implement a successful corrections program that is distorting the judiciary's sentencing responsibility, rather, it is this Court's decision mandating that a judge cannot take into account the reality of the actual operation of the system. Nor is the judge who automatically takes credited good time into consideration "enhancing a defendant's sentence on the basis of anticipated good-time reductions" as the majority claims. The sentence is not enhanced. Rather, the sentence is made more rational precisely to the extent that it accurately tailors the term on the basis of predictions regarding the defendant's potential or lack of potential for rehabilitation. To be sure, the indeterminate

[6] While age is not a factor specifically set forth in the United States Sentence Guidelines Commission recommendations to Congress, the Commission notes that it is a factor "correlated highly with the likelihood of recidivism," 41 Crim L Rptr 3129, which for policy reasons is not presently included. The reform of sentencing in the federal system contemplates periodic submission of recommendations to Congress, 28 USC 994(p). Under the federal scheme, resolution of policy questions thus remains in the policymaking body of government.

sentencing model has its flaws and its critics. However, so long as that is the model the Legislature has adopted, there is no rational basis to require the trial judge to exclude truthful information from the calculation of a sentence which is not excessively severe nor motivated by impermissible factors. The motivating factor for this sentence was the judge's determination of how much time he thought the defendant actually should serve for the protection of the community. Until today, I would have thought that was precisely what the law required and what the public demanded of the trial judiciary.

BRICKLEY, J., concurred with BOYLE, J.

GRIFFIN, J., took no part in the decision of these cases.