**Johannes HANSARD, Individually and on Behalf of All Others Similarly Situated, Plaintiffs–Appellants,**

v.

**Mark J. BARRETT, Individually and as Superintendent, Franklin County Jail; Al Clark, Individually and as Chief Deputy, Franklin County Jail, Defendants–Appellees.**

No. 91–3927.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 15, 1992.

Decided Dec. 2, 1992.

Todd D. Penney, Dinsmore & Shohl, Cincinnati, Ohio (argued), David Goldberger, Ohio State University College of Law, Columbus, Ohio (briefed), for plaintiff-appellant.

Harland H. Hale, Pros. Attorney's Office, Columbus, Ohio (argued and briefed), for defendant-appellee.

Before: KENNEDY, and MILBURN, Circuit Judges; and WELLFORD, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Plaintiffs, a class of homosexual inmates of the Franklin County Jail, Columbus, Ohio, appeal the summary judgment entered in favor of the defendants in this class action involving alleged discrimination in their opportunity to earn a reduction in sentences for work done at the jail. Plaintiff Hansard represents the class of all present and future inmates at the Franklin County Jail who have been or will be classified by defendant jail officials as homosexuals. When an inmate is classified as a homosexual upon entering the jail, he is housed in 6 West Left 1 (6WL1), a range of the jail designated for homosexual housing. Inmates living in 6WL1 are segregated from the general prison population.

Plaintiffs do not challenge the classification and segregation of homosexual inmates. They do charge that inmates identified as homosexual are automatically and categorically denied the opportunity to earn discretionary reductions in sentences available only to inmates who perform work during their terms, in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Because we find that the Due Process Clause is not implicated, and that the plaintiffs failed to present evidence of a discriminatory policy, we AFFIRM the District Court's grant of summary judgment in favor of the defendants.

I.

Plaintiff Hansard filed this class action in December, 1988, pursuant to 42 U.S.C. § 1983 and 29 U.S.C. § 792, alleging arbitrary and discriminatory treatment of inmates at the Franklin County Jail who are designated as homosexual. The class was certified in August, 1989. The defendants in this action are Mark J. Barrett and Al

Clark, superintendent and chief deputy of the jail, respectively. Both were sued individually and in their official capacity. The case was submitted to the District Court on cross-motions for summary judgment. The parties agreed that the depositions and any affidavits submitted with the summary judgment motions would constitute the record in the action. On August 29, 1991, the District Court granted defendants' motion for summary judgment and denied plaintiffs' motion for summary judgment.

■ This Court reviews the granting of a motion for summary judgment *de novo, Aetna Insurance Co. v. Loveland Gas & Electric Co.,* 369 F.2d 648, 651 (6th Cir.1966); *Hines v. Joy Manufacturing Co.,* 850 F.2d 1146, 1149 (6th Cir.1988), and uses the standard under Federal Rule of Civil Procedure 56(c), the same test as the District Court employs. *Brooks v. American Broadcasting Cos.,* 932 F.2d 495, 500 (6th Cir.1991). The Supreme Court clarified the relevant inquiry:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Moreover,

> there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A court should view the evidence in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513. Additionally,

> [a]n appellate court can find an alternative basis for concluding that a party is entitled to summary judgment and ignore any erroneous basis relied upon by the district court, provided it proceeds carefully so the opposing party is not denied an opportunity to respond to the new theory.

*Hines,* 850 F.2d at 1150 (quoting *Herm v. Stafford,* 663 F.2d 669, 684 (6th Cir.1981)). The District Court granted summary judgment on the equal protection claim based on its finding that inmates have no fundamental right to earn work reduction credits (and on a separate basis not before this Court). We affirm the District Court's grant of summary judgment on the alternative basis that the plaintiffs failed to make a sufficient showing that the defendants applied the work reduction program in a discriminatory fashion.

## II.

In Ohio, county sheriffs have the *discretion* to recommend reductions of inmates' sentences upon "a consideration of the quality and amount of work done in the kitchen, in the jail offices, on the jail premises, or elsewhere." Before a reduction is granted, the sentencing judge or magistrate must concur with the sheriff's recommendation. Ohio Rev.Code § 2947.151. To become eligible to earn these credits an inmate must obtain a job in the jail facility. Whether homosexual inmates are denied eligibility for these jobs is at the center of this dispute.

In their motion for summary judgment and in their brief to this Court, plaintiffs argue that section 2947.151 is unconstitutional on its face and as applied by the defendants. They assert that defendants categorically deny homosexual inmates access to work assignments and the opportu-

nity to reduce their sentences because they are homosexual, in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The defendants answer that inmates have no protected liberty interest in this discretionary program for sentence reductions and that homosexuals were not denied work opportunities, therefore, no constitutional violation occurred.

### A. Due Process Claim

■ The United States Supreme Court has held that inmates have no inherent constitutional right to good time credit. *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). But it has also recognized that a state may nevertheless "create a liberty interest protected by the Due Process Clause through its enactment of certain statutory or regulatory measures." *Hewitt v. Helms,* 459 U.S. 460, 469, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983). The Court further explained that, by the use of "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed," a state may create in its prisoners a protected liberty interest. *Id.* at 471, 103 S.Ct. at 871.

Plaintiffs claim that Ohio has created a protected liberty interest in the plaintiffs' right to the sentence reductions at issue here through the promulgation of Ohio Administrative Code, § 5120:1-8-15(G). This section reads:

> Prisoners placed in administrative segregation shall receive all regular privileges and rights unless they pose a serious threat to the security of the facility or the health and welfare of the individual.

This section guarantees that those in administrative segregation will have the same rights and privileges as do those in the general population. It does not concern or in any way establish a right on the part of any prisoner to earn the credits involved here. That right is governed by section 2947.151 of the Ohio Revised Code.[1] Under this section, a sheriff has complete

discretion in recommending a sentence reduction. No prisoner, whether in the general population or administrative segregation, has an absolute right to earn a recommendation for reduction of sentence by reason of his or her work in the jail. As the District Court found:

> The mandatory language found by the [Supreme] Court in *Hewitt* to require constitutional safeguards is clearly lacking in O.R.C. § 2947.151. That statute merely provides that the sheriff *"may"* recommend a reduction in an inmate's sentence based on work performed. Even if an inmate is granted a work assignment and performs commendably, the statute does not direct that the sheriff make such a recommendation—the decision lies solely within the sheriff's discretion. Clearly, then, no protected liberty interest in either good time credits or work opportunities is created by O.R.C. § 2947.151.

Because the plaintiffs are not vested with a constitutionally protected interest in either recommendations for sentence reduction or work opportunities, this Court finds that their denial does not implicate the Due Process Clause of the Fourteenth Amendment.

### B. Equal Protection Claim

■ The plaintiffs allege that they are categorically denied the opportunity to earn good time credits, based solely on their homosexual classification, in violation of the Equal Protection Clause. All inmates in the Franklin County Jail who are granted work assignments are trustees and must live in worker dormitories. Plaintiffs allege that homosexual inmates segregated in 6WL1 are prohibited from transferring into these dormitories. Because they cannot fulfill this housing requirement, this alleged prohibition creates an across-the-board ineligibility of homosexuals assigned to administrative segregation for job assignments.

---

1. The sentence reductions involved here are separate and distinct from the right to earn time

off a sentence for good behavior provided in Ohio Rev.Code § 2967.19 *et seq.*

### 1. Official Procedure for Work Assignments

Work assignments are made at the jail in accordance with Administrative Regulation 865 and Procedure 865:1. Any inmate interested in becoming a worker, a.k.a. "trusty" [sic], must apply in accordance with the following procedure:

1. Any inmate that wishes to become a trusty must fill out a call-card and explain why he wants to become one. The duty floor officer shall forward this call card to the classification officer.

2. Trusties shall be considered on a first-come-first-serve basis.

3. Upon receipt of the call-card, the officer in charge of trusty selection shall obtain a copy of the inmate's slate and shall run a record check [on] the inmate.

4. An inmate's previous record, amount of bond, and jail offenses shall be considered for selection.

5. The trusty positions are: laundry workers, painters, custodial workers, and kitchen workers.

6. The inmate shall be cleared through the medical section to be physically able to perform the duties of the position requested.

7. If more than one inmate is being considered for the same position, the inmate with the best qualifications in the area of the duties to be performed in the position will be selected.

Dept.Proc. 865:1.

Regulation 865, in effect since August 15, 1981, provides that "[p]risoners selected as trusties [sic] shall be chosen and have their status changed pursuant to [Regulation] 827." Regulation 827 §§ 1, 4.1–4.4 classifies prisoners according to their age, sex, offense and legal status upon admission to the facility. A prisoner's legal status is further classified as either "pretrial," "trusty," "sentenced," "work release" or "other." Reg. 827 § 4.4.1–4.4.5. An inmate who wants to work must have his status changed to "trusty" because only "trusties" can live in trusty or worker housing. Pursuant to Regulation 827

§ 8.7, a prisoner may request that his classification status be changed. "Homosexuality or vulnerability to attack," "propensity for violent ... behavior," and other "special needs" are considered "evidence of unusual behavior." Reg. 827 § 4.6.3. Any "special needs" inmates, including identified homosexuals, must be reclassified as "trusties" before obtaining a work assignment.

Regulation 827 § 11 lists the following evaluation and selection criteria used in choosing inmates for work assignments and "trusty" status:

All prisoners being considered for Trusty status shall be evaluated and selected on criteria including, but not limited to:

11.1 The nature of the prisoner's offense and sentence.

11.2 Previous attempts to escape by the prisoner.

11.3 The prisoner's ability to understand directions.

11.4 The quality and quantity of the prisoner's work.

11.5 The prisoner's behavior in the correctional facility.

There is nothing in these regulations indicating that inmates housed in 6WL1 are prohibited from transferring to worker dormitories. The factors considered in deciding whether or not to grant an inmate "trusty" status do not include a prisoner's sexual orientation. Thus, facially, the regulations in effect at the time this action was filed treated all prisoners equally and did not discriminate against homosexual inmates or deny them the opportunity to apply for work assignments and "trusty" status.

### 2. Application of the Work Assignment Procedure

Next, the plaintiffs argue that the defendants applied Regulation 827 to homosexual inmates in a discriminatory fashion. Plaintiffs offered certain deposition testimony to support this allegation. However, an examination of the proffered testimony finds no more than a scintilla of evidence that homosexual inmates were denied ei-

ther the opportunity to apply for jobs or that their applications were denied because of their homosexual designation.

Plaintiff Hansard testified that "no homosexuals are allowed to get a job as a runner or anything else. *I filled out a call card for a job* in the barbering position, and I don't know if he is the corporal or the sergeant, but his name is West, and he wrote me back, "No way, Miss Hansard." (Emphasis added). Contrary to showing that Hansard was denied all access to work assignments, this testimony shows that he was able to apply for a job as any other inmate. Hansard asserts that he was denied the job solely because he is a homosexual.

Joseph A. Walters, the classification sergeant on duty at the time of Hansard's incarceration and the person who made the decision not to give him work, testified that the reason Hansard wasn't given the job was because he had a history of disciplinary problems.

Q: In regards to Mr. Hansard ... do you remember whether or not he made any request for work assignments?

A: Yes he did.

Q: And can you tell what your determination was with respect to Mr. Hansard on his work assignment request?

. . . .

A: Well, it looks like the date here is October 24th, '88, no trustee status due to disciplinary problem.

Q: So

A: Looks like prior to that he had several rules, facility rules, violations.

Q: What, what does slate card indicate those rules violations were?

A: Well, it looks like he had a threat to security.

. . . .

A: Looks like August the 15th is when he was threat to security. Looks like on September the 19th he was for horse playing, looks like October the 3rd he was charged with disobeying staff, smoking in prohibited area. And on October the 7th it looks like there was a hoarding medication. He probably submitted for the job and October

24 he *was denied due to a disciplinary problem.*

(emphasis added). Hansard does not deny the accuracy of his disciplinary record. An inmate's disciplinary problems at the jail are a valid justification for denying him worker status under Regulation 827 § 11.5. Although West's statement, if made, is inexcusable, he was not the person who made the work decision.

Jackie Lee Wilson is the only other homosexual inmate assigned to 6WL1 specifically identified as discriminated against. He testified that he applied for a job in the kitchen as a cook.

Q: Okay. How long did it take before you received the answer back that you couldn't get the job?

A: It was, it was long after ... they had hired the guy. The guy had already been hired. They had already hired the guy after I had put in for it. Soon as I heard about it I put in for it and after they had hired a guy, then that's when they came up and told me well the job had been filled already and we don't allow homosexuals working in the kitchen.

Q: Do you happen to know who did get that job?

A: It was one of the straight guys from another range—from one of the regular ranges. You know what I'm saying? They would never give SWAL no jobs.

Q: When you say SWAL

A: The homosexual tank.

It is unclear from this testimony when Wilson applied for the job. If he applied after the job had been filled, this testimony is inapposite. If, on the other hand, Wilson applied for the job before it was filled, this raises the question of why he was denied it. The testimony reveals that an unidentified jail official told Wilson that homosexuals were ineligible to work in the kitchen. Prisons are often an unpleasant place to live and known homosexuals are frequently subject to derogatory and inappropriate comments from other prisoners and jail officials. However, this statement is not

attributable to either Sergeant Walters, the classification sergeant, or the defendants. A statement by one jail official does not make an official policy. Indeed, Sergeant Walters testified that Wilson never applied for a job.[2] The plaintiffs have failed to present more than colorable evidence that Wilson was denied the job because he was a homosexual.

Don Thomas is a floor sergeant who previously has participated in the prisoner intake procedure, but who has no personal knowledge of the classification procedure involved in assigning inmates to worker status. Thomas testified, to the best of his knowledge, that all inmates, including homosexuals, who want a job must fill out a call card so indicating. He thought that unlike those in the general population, the segregated inmate in 6WL1 must additionally apply for a "reclassification hearing" to become eligible to live in the worker dormitories. According to Thomas, a homosexual inmate must convince the hearing board that he is "no longer homosexual" before having his status changed.

The testimony of defendant Barrett, who had direct knowledge of the procedures used, disputes the requirement of a "reclassification hearing." Barrett testified that 6WL1 inmates need only fill out a call card requesting work and sign a statement indicating that the move out of segregation and into worker housing was the inmate's own decision. Other than the requirement of this signed statement, characterized as a "waiver," homosexual inmates are considered for work in the same manner as non-homosexuals. The plaintiffs claim that this policy was initiated after this suit. It appears that in most of the examples the defendants identified, homosexual prisoners who had obtained work did so after this action was filed, but there were at least a couple who had worked earlier.[3] There were no records of earlier periods avail-

able. However, Barrett testified that this has been the procedure since 1986, the year he began working at the jail. Walters, the person in charge of worker assignment at the time in issue, corroborated this testimony in his deposition.

Thomas' testimony provides no more than a scintilla of evidence that a reclassification procedure was required. He lacked personal knowledge. His testimony indicates that he wasn't certain about the work assignment procedure. He knew that because identified homosexuals live in special housing, there is a procedure required of them that is not required of the general population before they are granted "trusty" status. This "special procedure" is explained by the "waiver" homosexual inmates are required to sign before leaving 6WL1 that Barrett and Walters testified about.

The problem the plaintiffs have failed to surmount is one of proof. The plaintiffs did not make a showing sufficient to survive defendants' motion for summary judgment. They argue that the defendants' policy against homosexuals is unconstitutional without first establishing the existence of such a policy. We therefore do not reach the question of whether a policy which denies homosexual inmates certain rights and privileges, which their heterosexual counterparts enjoy, violates the Equal Protection Clause. There is no evidence that either of the individual defendants personally discriminated in any way.

### III.

Accordingly, the District Court's grant of the defendants' motion for summary judgment on the plaintiffs' due process and equal protection claims is AFFIRMED.

2. Walters also testified that Wilson would probably not have been eligible if he had applied. Wilson was wanted by Summit County after he served his sentence at the Franklin County Jail. Inmates who have a warrant or detainer on them are considered security risks and can be denied work assignments on that basis.

3. Two homosexual inmates, David Thompson and "Sweet Pea," qualified for job assignments and were transferred to the worker dormitories while plaintiff Hansard was in jail.