**Rajesh BAJI, D.D.S., Plaintiff–Appellant,**

v.

**NORTHEAST REGIONAL BOARD OF DENTAL EXAMINERS, INC., Defendant–Appellee.**

**No. 99–4168, 00–3143.**

United States Court of Appeals, Sixth Circuit.

Jan. 31, 2001.

354

Before KEITH, BOGGS, and COLE, Circuit Judges.

PER CURIAM.

In this diversity action, Dr. Rajesh Baji appeals a grant of summary judgment to defendant Northeast Regional Board of Dental Examiners, Inc. (NERB), whose dental licensing test he failed. Baji asserts that genuine issues of material fact remain in the case. Baji also appeals the district court's denial of his own motion for partial summary judgment. In a related appeal, Baji also challenges the lower court's taxation of certain of defendant's litigation costs against him, pursuant to Fed.R.Civ.P. 54(d), which followed the dismissal of Baji's complaint. For the reasons that follow, we affirm the rulings of the district court.

I

Dr. Rajesh Baji, D.D.S., brought seven claims against NERB, alleging two contract-based claims (breach of contract and breach of implied duty of good faith), three intentional torts (intentional infliction of emotional distress, fraudulent misrepresentation, and malicious conduct), and two further tort claims of negligence and negligent misrepresentation. On these latter two negligence claims, and on the purported breach of contract, Baji sought partial summary judgment. Baji alleged injury from the delay in receiving his dental license, a delay he claims was caused by NERB's malfeasance, and sought $175,000 in general, special, and lost income damages, and $3,000,000 in punitive damages. NERB is a Maryland non-profit corporation chartered in the District of Columbia, which administers tests in Ohio and other states. The parties agree that Baji's tort and contract claims are governed by Ohio law.

Ohio places control of the licensure of dentists in the Ohio State Dental Board ("State Board"). Ohio Rev.Code Ann. § 4715.03 (West 2000). This includes the responsibility to test applicants, and also a requirement that an "applicant for a license to practice dentistry shall ... pass an examination, consisting of practical demonstrations and written and oral tests, or both, as the board determines necessary." Ohio Rev.Code Ann. § 4715.11 (West 2000). The State Board is empow-

ered to use certificates provided by other testing agencies, such as NERB, in order to fulfill its mandate, "subject to conditions as the state dental board may prescribe." Ohio Rev.Code Ann. § 4715.11 (West 2000).

Baji is now a practicing Ohio dentist, but he had considerable difficulty acquiring his professional license. Baji attended Case Western Reserve College of Dentistry, graduating in May 1995. In order to receive a dental license in Ohio, a dental school graduate must also pass an examination designated by the State Board. NERB's examination is accepted by Ohio and 14 other states for this purpose. NERB issues a certificate to those who pass its exam, which is then presented to the State Board in partial fulfillment of the requirements to practice dentistry. Dr. Baji failed NERB's exam four times, in May, August, and December 1995, and again in May 1996. Each time, Baji paid a considerable fee ($800 in 1995) to NERB. In November 1996, Baji took an examination administered by another board, the Southern Regional Testing Agency, Inc. (SRTA) and passed. This examination was also accepted by Ohio, which licensed Baji as a dentist in January 1997.

NERB's examination consists of four parts. In order to receive a certificate of "minimal competence," the applicant must receive a score of 75 (out of 100) on each of the four sections.[1] Part I, "the written test," consists of 280 multiple choice questions; Part II involves preparing crowns and dentures on a manikin; Part III, the "restorative exercise," tests the ability to fill cavities on a live patient; Part IV also uses a live patient, assessing the applicant's ability to address periodontal problems. This information, along with much

else describing the examination content, procedure, and scoring, is given in the "Candidate Manual" provided to applicants prior to the test.

The restorative exercise, which caused Dr. Baji the most difficulty, is composed of four exercises, Amalgam (Preparation and Restoration) and Composite (Preparation and Restoration). The "preparations" involve digging into a tooth affected with a "cavity" (or dental caries) to properly remove the decayed tissue and prepare the tooth to receive a stable filling, which is put in during "restoration." The amalgam exercise was performed on a back tooth and the more cosmetic composite was used on a front tooth; these preparations were each worth 31 points. After the candidate has made a hole in their tooth, the patient is sent for evaluation and scoring by examiners, and then sent back. After fillings are applied, the tooth is examined again for a possible 19 more points in both the amalgam and composite sub-tests. These evaluations are done "blind"—the evaluators do not know which candidate performed the operation, save by a number, and they do not observe the operation itself, only its results. As with most of the NERB sub-tests, incompetent performance results in receiving no points for an exercise. Thus, incompetent performance in one of the preparations meant a score of 69, a failing score in the restorative exercise, and therefore in the examination as a whole.

On the May 1995 test, Baji failed both the written and restorative (amalgam preparation) portions. After an initial failure, a candidate is required to retake the portions he failed. In August 1995, Baji therefore took only the written and restor-

---

1. NERB "recommends" the score of 75 as showing minimal competency, but its materials make clear that competency determina-tions are ultimately the responsibility of the State Board.

ative parts, but he failed them both, again having trouble with amalgam preparation.[2] Because he had failed two exercises twice, NERB rules required Baji to undergo 20 hours of remedial training and retake the entire exam. He did so in December 1995, with even poorer results; he failed the written portion, the restorative portion (both the amalgam and composite preparations were judged inadequate), and this time also the manikin portion. At this point, NERB rules would then have required Baji to take 13 weeks of remedial education and then retake the entire test.

Instead, Baji engaged an attorney, who contacted NERB on February 5, 1996 offering to "waive" Baji's complaints about the last three tests in exchange for permission to retake only the written and restorative parts. NERB agreed, and also released Baji from the requirement of 13 weeks of remedial education.

Pursuant to this agreement, Baji took the NERB examination for a fourth time in May 1996. He passed the written test (with the lowest possible passing score), but again failed the restorative exercise, once more being judged incompetent at amalgam preparation. Baji wore a badge labeled "remedial." This was used by NERB to identify those candidates who would be required to present proof of the necessary remedial education before being allowed to proceed. Although given his testing history, this would normally have been required of Baji, because of his negotiated agreement with NERB the tag was unnecessary. According to NERB, Baji's legal dispensation had not been communicated to their tag printer, which generated Baji's tag simply according to his past test performance. In the afternoon, during the composite exercise, Baji was confronted by

an examiner to show proof that he had undergone remediation. This created an argument, which took a significant amount of time to be resolved. When it was resolved, Baji was challenged by another examiner for exceeding his time limits. The examiner eventually allowed Baji to complete the afternoon portion of the exam. These disputes occurred during his composite restoration, some time after his unsuccessful amalgam preparation.

In November 1996, Baji passed the SRTA test and was licensed in January 1997. However, still unhappy with his earlier experiences, Baji filed suit against the NERB in April 1998. Cross-motions for summary judgment were filed in March 1999. Baji disclosed two experts, Dr. Martin Shapiro (an expert on lost wages as well as test validation) and Dr. Frank Courts (a dentist and expert on dental testing) and submitted their reports. Their depositions were taken by the defendant in June 1999 and July 1999, respectively, during the pendency of summary judgment motions. NERB also deposed Dr. Robert Minnich, the head of the SRTA, a sister regional testing authority, who administered the test Baji passed. NERB had already deposed, in October 1998, Dr. Kenneth LaPolla, who had repaired the tooth of Baji's demonstration patient from the ill-fated May 1995 amalgam preparation. In addition to these depositions, NERB incurred copying charges from material it requested from the ADA and the SRTA.

In August 1999, NERB's summary judgment motion was granted and Baji's motion for partial summary judgment was denied. NERB submitted a bill of costs in September. The above-noted discovery

---

**2.** The filling performed by Baji during this test had to be repaired by a private dentist at Baji's expense.

costs were allowed by the trial judge in his order of January 2000 and no more are sought. Baji was taxed with costs of $7314.70. Baji claims this taxation of costs was an abuse of discretion because these costs were not "reasonable and necessary."

## II

On appeal, we review the grant of summary judgment *de novo*, using the same Rule 56(c) standard as the district court. *Hansard v. Barrett*, 980 F.2d 1059, 1061 (6th Cir.1992). The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir.1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

We review a district court's award of taxation of costs for an abuse of discretion. *Jones v. Continental Corp.*, 789 F.2d 1225, 1233 (6th Cir.1986). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir.1996) (upholding the award of attorney's fees).

### Baji's Contractual and Tort Claims

We agree with the district court that summary judgment for the defendant is appropriate on Baji's claims. For essentially the reasons articulated more fully in the court below, Baji has, as a matter of law, failed to establish either the existence of legal duties owed him by the defendant, or a causal sequence linking NERB's actions to Baji's repeated failures.

■ Baji's contractual claims are largely based on the Candidate Manual issued with the test, which he claims, *inter alia*, gave him a right to be graded anonymously. He claims the "remedial" tag in May of 1996 breached this provision of his "contract," which we assume for purposes of summary judgment to exist.[3] However, he admitted during deposition he has no evidence that his anonymity was violated by the examiners, only that it could have been. The only contact between Baji and the examiners scoring his exam was through the patient going back and forth between the two. If these examiners had tried to find out which dental candidate had done certain procedures, the tag would perhaps have allowed them to identify him more easily, but Baji never showed any evidence they ever undertook such an inquiry in the May 1996 exam. Baji's fears of possible breaches of possible contractual duties are not a basis for surviving summary judgment.

■ The attempt by Baji to use the tag incident, and his associated quarrel with the floor examiners, to establish an intentional tort was committed against him can be no more successful. To establish the intentional infliction of emotional distress in Ohio, a defendant's "conduct [must be] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) (quoting Restatement (Second) of Torts, § 46 (1965)). It is uncertain from the record exactly what NERB's

---

**3.** The tag might also be arguably a violation of Baji's agreement with NERB following the December 1995 test, but Baji does not emphasize this agreement, which by its terms "waives" all contractual claims from the first three examinations.

agents said to Baji when they demanded (what they thought was required) proof of remedial education and initially attempted to count as part of his examination period the time he spent disputing his remedial status. Even viewing the facts favorably to Baji, and assuming the examiners yelled at him and were sharp with him, no evidence has been shown that a civilized community would not tolerate their behavior. Moreover, because these incidents took place after Baji's deficient performance in the morning amalgam preparation had already doomed his May 1996 exam, he cannot establish causation with regard to his claimed damages.

Baji's claims of negligence are for the most part based on the idea that NERB failed in its professional duty to provide him with a psychometrically valid exam that accurately measures what it purports to, in this case dental competency.[4] This allegedly negligent provision of a service would amount to essentially a form of malpractice, which one might term "testing malpractice." At oral argument, Baji acknowledged this tort is new to the courts of Ohio, and pointed to no other jurisdiction where such an action has been entertained.

■ Challenges by those who fail professional licensing exams are sometimes made, but they very rarely succeed. In Ohio, a court will not substitute its judgment for that of a professional licensing board as to grades received by an applicant for admission to the practice of a profession, unless evidence shows the ex-amination was "arbitrarily or capriciously graded." *Cox v. State Medical Board of Ohio*, 83 Ohio App. 316, 83 N.E.2d 648, 650 (1948). Even where assessment of performance on an examination is somewhat subjective, the result cannot usually be attacked unless the lack of criteria constitutes "lack of professional judgment" by examiners. *Graham v. Ohio Bd. of Bar Examiners*, 98 Ohio App.3d 620, 649 N.E.2d 282, 285 (1994).

■ Baji goes further than the usual disappointed examinee, by arguing not merely that his test was inaccurately graded, but that the NERB test itself is invalid, and fails to measure accurately the dental competence of anyone. According to him, "NERB's grading is meaningless, since the exam cannot measure minimal competency in dentistry[.]" (Baji Reply Br. at 7). Baji's main evidence for this proposition is based on the relatively small amount of money NERB has spent to validate its test psychometrically, in violation of what Baji and his experts assert are the standards of the testing community to provide a "valid and reliable test." Based only on this lack of *validation*, Baji attempts to establish the existence of a genuine issue of material fact as to the test's *validity*, effectively attempting to place the burden of proof on NERB, in that defendant's supposed failure to prove the test is valid should allow trial on the issue.

Initially we note that, with respect to Baji, the record establishes the test to have at least "reliability;" taken as "the extent to which an experiment, test, or

---

4. At several points, Baji appears to argue his contractual complaints as the basis for his tort theories. This is generally impermissible under Ohio law. *See Textron Financial Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 684 N.E.2d 1261, 1270 (1996); *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir.1976) (interpreting Ohio law). Baji primarily characterizes NERB's negligence as involving its "failure to administer a valid and reliable exam." (Baji Br. at 33). He characterizes his misrepresentation claims as saying that NERB represented to him that its test measured "clinical competence in dentistry." (Baji Br. at 39). These are the same faults he attributes to NERB in his breach of contract claim. (Baji Br. at 41). Given our resolution of this case, we need not decide this issue.

measuring procedure yields the same result on repeated trials." Webster's 3d New International Dictionary 1917 (1986). Baji's results were highly consistent, with repeated poor performance in the same sections and subsections of NERB's exam. Validity, the ability of a test to measure what it purports to, cannot be established from repeated trials. However, it seems implausible that a two-day-long test that assesses, for example, the ability to correctly identify human oral anatomy and the ills that befall it, and the ability to treat carious teeth, has no more to do with dental competence than a test of the ability to speak Portuguese—the sort of "invalid" test on which relative performance would genuinely be "meaningless" for dentistry. Just as a bar exam may not capture all elements of being a good lawyer while still being relevant as a rough estimate of minimal legal competency, an NERB exam appears to provide some evidence of fitness to practice dentistry, and Baji has failed to make any showing that would call this into doubt. *Cf. Graham*, 649 N.E.2d at 285 (rejecting plaintiff's claim that "defendants' failure ... renders the examination results unrelated to plaintiff's ability to practice law").

◼ More importantly, however, Baji can point to no law establishing NERB's duty to provide him with a test having a specified level of validity, much less to any law that places on NERB the burden to prove this level of validity. The non-existence of a tort of "testing malpractice" does not leave Baji without a remedy. His proper remedy was before the Ohio State Dental Board, a party conspicuous by its absence from Baji's litigation against NERB. When Baji was denied a license, he had a right to a hearing, Ohio Rev.Code Ann. § 119.06 (West 2000), at which time he could have presented his arguments on the invalidity of NERB's

test to the responsible authority. Baji has claimed NERB's "invalid" test of competency produces not only Type II errors (false negatives)—which allegedly injured him personally—but also Type I errors (false positives), indicating that Ohio is licensing incompetent dentists on the basis of NERB's test, and making the test a menace to public health. (Baji Br. at 21). Given the seriousness of these allegations, any evidence Baji had to support them would no doubt have received serious attention had it ever been brought before the State Board. As a group of dentists legally empowered to determine issues of dental competency, the Board is in a far better institutional position to evaluate Baji's charges than are the courts. *See Riffe v. Ohio Real Estate Appraiser Bd.*, 130 Ohio App.3d 46, 719 N.E.2d 587 (1998) (requiring due deference by courts to the professional standards established by administrative bodies); *see also Wilner v. State Dep't of Licensing and Regulation*, 92 Mich.App. 713, 285 N.W.2d 432, 435 (1979) ("It is not the province of this Court to order an examinee certified when in the judgment of the certifying board his performance does not meet the standard of the profession. Nor can this Court sit as a superexamining board.").

### Costs Taxed Against Baji

◼ Fed.R.Civ.P. 54(d) provides that "costs ... shall be allowed as of course to the prevailing party unless the court otherwise directs." We have held that "this language creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir.1986). Ordinarily, "the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party." *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir.1989). "Necessity is de-

termined as of the time of the taking, and the fact that a deposition is not actually used at trial is not controlling." *Ibid.; accord* 10 Charles Alan Wright, Arthur Miller, & Mary Kay Kane, Federal Practice & Procedure, § 2676 (1998).

 Since costs are presumptively awarded and the issue is in the discretion of the trial court, it would require a heavy showing that this discretion was abused for us to reverse the taxation of costs. Generally, this would require the lower court ignoring the criteria set by the Sixth Circuit, as discussed by *White & White,* 786 F.2d at 730, or otherwise a certainty on our part that a clear error in judgment was committed. However, a district court's award of costs must be supported by factual findings. *See Phelan v. Bell,* 8 F.3d 369, 375 (6th Cir.1993); *see also Baker v. First Tennessee Bank Nat. Ass'n,* No. 96–6740, 1998 WL 136560, at *4 (6th Cir. March 19, 1998) (unpublished) (remanding for such findings).

 The district court found Minnich's deposition to have been necessary. Minnich was the administrator of the SRTA, which Baji had designated as a "good" test. His passing the SRTA proved, according to Baji, that he was now (and tended to show he had been) a competent dentist. Minnich's knowledge of the SRTA was necessary to rebut Baji's reliance on it. The district court explicated these points, and its opinion is reasonable.

Similar reasoning was applied to the copying charges from the ADA and the SRTA. Baji had passed both of their tests[5] and he had failed NERB's. Baji attempted to make much of this difference, arguing that these were "good tests" that had found Baji minimally competent, and because NERB's test had consistently rejected that hypothesis (supposedly proven now by competent external evidence), it must be bad. This required NERB to get documents necessary to show whether the tests were comparable and to what extent it could be true that they used superior testing procedures.

Baji's experts, Courts and Shapiro, were clearly important to the case. Both of them had already filed expert reports that formed the basis for Baji's claims. As noted above, Baji had very little legal authority for his allegation that NERB owed him the duty of providing a "valid and reliable" test. This principle was generated in large part by Courts and Shapiro. It was reasonably necessary that they be deposed regarding the basis of their opinions and their criticisms of the NERB. Moreover, it is generally expected that expert witnesses will be deposed by the other side. Fed.R.Civ.P. 26(b)(4)(a). Under *Sales,* depositions do not have to be used to be taxed, but the district court noted also that the defendant had used the expert depositions during oral argument, and that the district judge himself had relied on Dr. Courts's opinion. The lower court's finding that these costs were reasonably necessary was not an abuse of discretion.

The costs of Dr. LaPolla's deposition were not directly related to information on the factual predicate of Baji's claims. Also, LaPolla's deposition was never used in the motion for summary judgment. On the other hand, LaPolla was in something of a unique position, being a professional wholly independent of NERB who had looked at a cavity worked on by Baji during an NERB test. Baji's complaint essentially alleged he was failed either because NERB's tests were totally at

---

5. The ADA apparently administers a written exam during dental school, which is not used by Ohio for licensing purposes. The ADA guidelines were also relied upon heavily by Baji as setting an "industry standard."

variance with an accurate measurement of dental competence, and/or the NERB was "out to get him" in some way. At trial, LaPolla could have provided an important "neutral" rebuttal of Baji's claims, at least as to the May 1995 test. The district court's finding that the deposition of La-Polla was "reasonable and necessary" at the time it was taken was not clearly erroneous.

Here the district court made sufficient factual findings that the costs were necessary to the litigation. Reviewing these findings, there is no basis to find an abuse of discretion. Accordingly we AFFIRM taxation of costs against plaintiff. In addition, we AFFIRM entry of summary judgment for the defendant. Given this resolution, we need not address Baji's appeal requesting partial summary judgment in his favor.