Jimmie MOORE, # 174468, Petitioner,

v.

Gerald HOFBAUER, Respondent,

No. Civ. 00–74920–DT.

United States District Court,
E.D. Michigan,
Southern Division.

May 23, 2001.

Jimmie Moore, Pellston, MI, Pro se.

Debra M. Gagliardi, Vincent J. Leone, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Respondent.

## OPINION AND ORDER DISMISSING PETITION FOR A WRIT OF HABEAS CORPUS[1]

TARNOW, District Judge.

Jimmie Moore ("Moore" or "petitioner"), presently confined at the Marquette Branch Prison in Marquette, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is that he is confined in viola-

tion of his constitutional rights. In his application, petitioner contends that his constitutional rights were violated when (1) his parole revocation hearing was not held within forty-five days after he was returned to Michigan Department of Corrections ("MDOC") custody under accusation of a parole violation, in violation of M.C.L. 791.240(a), and (2) the warden allegedly rescinded 643 days of earned special good time sentence credits for the period from December 8, 1990, to December 31, 1998.

It is undisputed that petitioner will have fully served his sentence by May 30, 2001. Petitioner seeks a writ of habeas corpus ordering his immediate release and declaratory relief. Respondent has filed a response to the petition, contending that petitioner's constitutional right to a reasonably timely parole revocation hearing has not been violated and that, because petitioner has no constitutional right to be granted good time sentence credits, the warden's decision not to grant him these credits did not violate his rights. For the reasons stated below, petitioner's request for habeas relief is denied and his Petition for a Writ of Habeas Corpus is dismissed.

## I. Factual Background

Petitioner is a state prisoner presently confined at the Marquette Branch Prison. Petitioner is currently serving the last month of his sentence for uttering and publishing following the revocation of his parole.

On October 28, 1986, Moore pleaded guilty in the Oakland County Circuit Court to uttering and publishing. Moore was sentenced to two to fourteen years imprisonment. Moore was paroled from this sentence on December 1, 1992. Moore acknowledges that he absconded from his parole term before completing it. On May

---

1. Staff Attorney Martin Cadwell provided quality research assistance.

5, 1998, Moore was arrested and charged with uttering and publishing under $ 100. Moore posted bond on May 11, 1998. On May 11, 1998, Moore also was sentenced to forty-five days time served for an outstanding 1991 warrant for damage to property under $ 100.

Moore was first served with notice of parole violation charges on May 13, 1998. On May 20, 1998, a preliminary examination was held on Moore's parole violation charge of uttering and publishing. This charge was dismissed for lack of probable cause.

On May 29, 1998, a second parole violation warrant was issued by the Michigan Department of Corrections ("MDOC").

On June 29, 1998, Moore was arraigned on the May 29th warrant. The May 29th warrant charged Moore with 1) failing to make his regularly scheduled report to his parole agent on or about February 3, 1994, and failing to make any subsequent report thereafter; 2) failing to comply with conditions of his parole when, on or about January 27, 1994, he tested positive for cocaine, methadone, morphine, and benzodiazepines; 3) committing a new crime by attempting to cash a stolen check for $ 170, and 4) committing a new crime by purchasing over $ 400 worth of merchandise with two fraudulent checks.

On July 7, 1998, a parole revocation hearing was held on the charges set forth in the May 29th warrant. Moore brought a motion to dismiss based on claims of constitutional violations, and violations of M.C.L. 791.240(a) and MDOC policy directive 06.06.100. Moore's motion was denied and the hearing was adjourned until July 13, 1998. At the July 13, 1998, hearing Moore renewed his claims. The Parole Board found that Moore was guilty of failing to report to his parole officer on or after February 3, 1994, and testing positive for various controlled substances.

Based on these parole violations Moore was returned to prison.

Moore challenged the revocation of his parole in the trial court, the Michigan Court of Appeals, and the Michigan Supreme Court, raising the following claims in each of those courts:

1. The Michigan Parole Board failed to hold petitioner's parole revocation hearing within forty-five days of him becoming available to the MDOC, as required by M.C.L. 791.240(a), violating his right to a speedy parole revocation hearing and rendering petitioner's parole revocation and subsequent imprisonment illegal.

2. Petitioner's parole revocation was not supported by sufficient evidence, thereby rendering his parole revocation and subsequent imprisonment an illegal abuse of discretion.

3. Petitioner's right to due process of law was violated when the Parole Board relied on erroneous information in revoking his parole.

In the petition before this Court, Moore presents the following claims for habeas relief:

1. Petitioner's right to a timely parole violation hearing was violated when the Parole Board failed to hold a revocation hearing within forty-five days of Petitioner's availability to the MDOC.

2. Petitioner's right to due process of law was denied when the warden arbitrarily and capriciously rescinded "a total of 643 days of petitioner's SGT entitlements." Petition at 8.

Respondent asserts that Moore is not entitled to habeas relief and his petition must be denied. Respondent argues that, (1) if for the sake of argument it is assumed that (as petitioner alleges) petitioner received his revocation hearing forty-nine days after he was available for MDOC

custody instead of within forty-five days as provided by M.C.L. 791.240(a), this did not violate petitioner's right to a reasonably speedy parole revocation hearing and (2) the warden's decision not to grant petitioner good time sentence credits for the period from December 8, 1990, through December of 1998, was reasonable exercise of his discretion, particularly in light of the fact that petitioner was living at liberty, unconfined, in society at large as a parole absconder during the majority of this time, from February of 1994 until his arrest in May of 1998.

## II. Analysis

### A. Allegedly untimely parole revocation hearing claim

In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court held that the requirements of due process apply to the revocation of an individual's parole. The Supreme Court held that a parolee is entitled to two hearings. First, due process requires holding a 'preliminary hearing' to determine whether there is probable cause or reasonable grounds to believe that the parolee has committed acts that would constitute a violation of parole conditions. *Id.* at 485, 92 S.Ct. 2593 (citations omitted). This preliminary hearing should occur "as promptly as convenient after arrest." *Id.* Second, a parolee is entitled to a revocation hearing prior to the final decision on revocation by the parole authority. *Id.* at 487–88, 92 S.Ct. 2593. This revocation hearing "must be tendered within a reasonable time after the parolee is taken into custody." *Id.* at 488, 92 S.Ct. 2593.[2]

In the present case, the record reveals that petitioner was first taken into custody as a suspected parole violator on May 13, 1998.[3] The first parole violation warrant, based on the new uttering and publishing charge was dismissed at a May 20, 1998, preliminary exam. A new parole violation

---

**2.** A parolee, however, is not entitled to a prompt parole revocation hearing where a parole violation warrant is issued and lodged with the institution of his confinement as a detainer, but is not executed. A parole board has no constitutional duty to provide an adversary parole hearing until an individual is taken into custody as a parole violator by execution of that parole board's violator warrant. *Moody v. Daggett*, 429 U.S. 78, 89, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). In *Moody*, a parolee killed two people while on parole from a ten year rape sentence. The parolee pleaded guilty to manslaughter and second-degree murder and received two concurrent ten year sentences. Soon after the parolee was incarcerated for these new crimes, the parole authority issued, but did not execute, a parole violation warrant. The board denied the parolee's request to execute the warrant immediately so that any sentence he received for violating his parole could run concurrently with the homicide sentence. The parolee filed a habeas corpus petition seeking dismissal of the parole violation warrant on the ground that he had been denied a prompt revocation hearing.

The Supreme Court denied the habeas petition, explaining: "in holding that '[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody,' *Morrissey*, 408 U.S. at 488, 92 S.Ct. 2593, we established *execution of the warrant and custody under that warrant* as the operative event triggering any loss of liberty attendant upon parole revocation." *Moody*, 429 U.S. at 87, 97 S.Ct. 274 (emphasis added). The Supreme Court found that the parolee's custody was based on the new criminal charges, *not* that parole violation warrant. Consequently, the parolee was not entitled to a prompt revocation hearing until the parole violation warrant was executed.

**3.** Petitioner was arrested on charges of new criminal conduct on May 5, 1998. However, he was not taken into custody on parole violation charges until May 13, 1998. Petitioner was in custody on the basis of the new criminal charges from May 5, 1998, until he was released on bond on May 11, 1998.

warrant was issued against petitioner on May 29, 1998. Petitioner was arraigned on this warrant on June 29, 1998, and a formal revocation hearing was held on this warrant on July 13, 1998. Thus, petitioner Moore received his formal revocation hearing almost exactly two months after being taken into custody on the parole violation charges.

■ In *Morrissey v. Brewer,* 408 U.S. at 488, 92 S.Ct. 2593, the Supreme Court suggested that a "lapse of two months [between the time when a suspected parole is taken into custody on the parole violation warrant and the final revocation hearing is held] would not appear to be unreasonable." Thus, Moore's revocation hearing, held two months after he was taken into custody on the parole violator warrant was presumptively reasonably timely. Further analysis of the facts of petitioner's case show this is correct.

The final revocation hearing must be held within a reasonable time. *See Inmates' Councilmatic Voice v. Rogers,* 541 F.2d 633, 636 (6th Cir.1976); To determine whether a delay is unreasonable, the court must consider: (1) the length of the delay, (2) the reasons for the delay; (3) the alleged violator's attempts to assert the right to a timely hearing, and (4) prejudice to the alleged violator. *See Hanahan v. Luther,* 693 F.2d 629, 634 (7th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1013 (1983) (citing *Barker v.*

*Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). The delay from the time Moore became available to the MDOC in mid-May of 1998 and the revocation hearing in mid-July 1998 was approximately two months. Petitioner does not allege that he asserted his right to a more expeditious hearing. Moreover, no matter why the hearing was held about two months after petitioner was taken into MDOC custody, Moore fails to show prejudice. Moore has not shown that any delay beyond the forty-five days provided in the Michigan statute prevented any potential witness from testifying or prevented the introduction of any exculpatory or mitigating evidence. Nor has Moore shown that holding the hearing earlier would have changed the outcome of the hearing.[4]

■ Rather, petitioner simply argues that, by holding his revocation hearing shortly after the time set forth in M.C.L. 791.240(a), his federal constitutional rights have been violated entitling him to habeas relief. Petitioner is mistaken. The short delay petitioner has alleged is at most a state law error. There is no indication that this brief delay prejudiced petitioner in any way or rises to the level of a constitutional violation.[5] Federal habeas relief is not available for correction of state law errors. *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)). See also, *Pulley v. Harris,* 465

4. Although in state court petitioner contended that his parole was arbitrarily and capriciously revoked on the basis of insufficient evidence, he has not denied that from about February 3, 1994, and thereafter, he failed to report to his parole officer and that he tested positive for a host of controlled substances on or about January 27, 1994. The Parole Board found that petitioner was guilty of these parole violations. Consequently, the Parole Board's revocation of petitioner's parole was based on sufficient evidence.

5. Even if it is assumed that a sufficiently long delay in holding the revocation hearing could by itself be so onerous as to deprive the suspected parole violator of due process of law at some point in time, the delay of two months between the time Moore was taken into MDOC custody as a suspected parole violator and given his parole revocation hearing does not even arguably constitute such an onerous delay.

U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) and *Floyd v. Alexander,* 148 F.3d 615, 619 (6th Cir.) (concluding that violation of state law is not cognizable in federal habeas corpus proceedings), *cert. denied,* 525 U.S. 1025, 119 S.Ct. 557, 142 L.Ed.2d 464 (1998). A violation of state law is only cognizable in federal habeas corpus where the error rises to the level of a denial of fundamental fairness. *Matlock v. Rose,* 731 F.2d 1236, 1242 (6th Cir.1984). This Court concludes that petitioner's parole revocation hearing was held within a reasonable time after he was taken into custody on the MDOC parole violator warrant.

**B. Denial of good time sentence credits**

Petitioner contends that his right to due process of law was violated when the warden did not grant him six hundred and forty three days sentence credits which he could have earned between December 8, 1990 and December of 1998, or rescinded previously earned credits. This Court disagrees.

▆▆▆ There is no right under the Constitution to earn or receive sentence credits. *Hansard v. Barrett,* 980 F.2d 1059, 1062 (6th Cir.1992). Neither is there any fundamental right to parole or to release from a sentence of incarceration that has itself been lawfully imposed. *See Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Michigan law and regulations do not create a right to parole, *Gavin v. Wells,* 914 F.2d 97, 98 (6th Cir.1990); *Sweeton v. Brown,* 27 F.3d 1162, 1164–65 (6th Cir.1994) (*en banc*), *cert. denied,* 513 U.S. 1158, 115 S.Ct. 1118, 130 L.Ed.2d 1082 (1995); *Lee v. Withrow,* 76 F.Supp.2d 789, 792–94 (E.D.Mich.1999).

The matter of disciplinary credits is governed by M.C.L. § 800.33; M.S.A. § 28.1403. The credits are applied to the minimum and maximum sentences that an inmate is serving, making the inmate eligible for parole sooner than otherwise would be the case. No credit is awarded during a month when an inmate is found guilty of major misconduct. Further, upon review of the inmate's institutional record, the warden may order forfeiture of all or a portion of the inmate's accumulated disciplinary credits if the inmate is found guilty of such major misconduct as escape or inciting to riots. Forfeited credits may be restored by the warden at a later date, upon review and recommendation of the disciplinary credit committee.

Sentence reduction for disciplinary credit, good-time, and special good-time credit is set forth in M.C.L. § 800.33; M.S.A. § 28.1403, which provides in pertinent part:

\* \* \* \* \* \*

(2) Except as otherwise provided in this section, a prisoner who is serving a sentence for a crime committed before the effective date of this 1986 amendatory act and who has not been found guilty of a major misconduct or had a violation of the laws of this state recorded against him or her shall receive a reduction from his or her sentence as follows:

(a) During the first and second years of his or her sentence, 5 days for each month.

(b) During the third and fourth years, 6 days for each month.

(c) During the fifth and sixth years, 7 days for each month.

(d) During the seventh, eighth, and ninth years, 9 days for each month.

(e) During the tenth, eleventh, twelfth, thirteenth, and fourteenth years, 10 days for each month.

(f) During the fifteenth, sixteenth, seventeenth, eighteenth, and nineteenth years, 12 days for each month.

(g) From and including the twentieth year, up to *687 and including the period fixed for the expiration of the sentence, 15 days for each month.

\* \* \* \* \* \*

(12) *The warden of an institution may grant special good time allowances to eligible prisoners who are convicted of a crime that is committed prior to the effective date of this 1986 amendatory act.* Special good time credit shall not exceed 50% of the good time allowances under the schedule in subsection (2). Special good time shall be awarded for good conduct only and shall not be awarded for any month in which a prisoner has been found guilty of a major misconduct.

M.C.L. 800.33 (1987) (emphasis added).[6]

Review of the record does not support Moore's claim that the warden forfeited previously awarded and accumulated good time sentence credits. Rather, the record shows that the warden merely declined to award Moore special good time sentence credits for the period from December 8, 1990 to December of 1998. See, Petitioner's Exhibit 10, MDOC Time Review and Disposition, GT Annual, dated 1/16/99 and Petitioner's Exhibit 12, MDOC Time Review and Disposition, Special, dated 4/17/99.

Under the statutory provision applicable to him, Moore was entitled to earn regular good time sentence credits for each month in which he was not found guilty of major misconduct or a violation of state law pursuant to M.C.L. 800.33(2). *Lowe v. Department of Corrections,* 206 Mich.App. 128, 129–33, 521 N.W.2d 336 (1994); *People v. Fleming,* 428 Mich. 408, 422–25, 410 N.W.2d 266 (1987). However, awarding of special good time is at the warden's discretion. M.C.L. 800.33(5) (1987). Petition-

er's regular good time maximum release date ("RGT/AMX") was established as May 30, 2001. See, Petitioner's Appendix 10. Petitioner's special good time projected maximum release date ("SGT/PMX") was projected as August 26, 1999, before the warden made a determination whether to grant Moore special good time credits.

The warden made a determination on April 17, 1999, not to award Moore any special good time sentence credits. See, Petitioner's Appendix 12. As a result, Moore's SGT/PMX was changed to May 30, 2001. However, Moore's RGT/AMX remained set at May 30, 2001.

Thus, the warden's action on April 17, 1999, was a decision not to award special good time credits and not to restore previously forfeited/not earned credits. This action did not change Moore's regular good time maximum release date.

■ Moore was at large in the community, living as parole absconder, during the majority of the period of time for which he was denied special good time sentence credits. The warden's decision not to award special good time sentence credits is an exercise of discretion provided for by Michigan statute. M.C.L. 800.33(12). *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), mandate considerable judicial deference to the discretion of prison officials in decisions to grant, deny, or forfeit sentence credits. This Court concludes that the warden's decision not to grant Moore good time sentence credits for the period from December 1990 to December 1998, which included the period of over four years during which Moore had tested positive for illegal drugs and lived in the community as a parole absconder,

6. Petitioner's crime was committed before April 1, 1987, the effective date of the act.

was a reasonable exercise of discretion which did not violate Moore's constitutional rights. Therefore, this claim does not entitle Moore to habeas relief.

 Furthermore, even if the warden had forfeited previously accumulated sentence credits for Moore's misconduct of testing positive for illegal drugs and absconding from parole supervision for about four years, this Court would find that this forfeiture did not deprive Moore of due process of law. The starting point for any discussion of the procedural due process rights of a prisoner subject to disciplinary proceedings is *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff* the Supreme Court held that where a state provides that good time credit can be forfeited only for serious misconduct, minimum requirements of procedural due process must be observed before deprivation of the credit. Specifically, prison authorities must (i) give advance written notice of the claimed violation, (ii) permit the inmate to call witnesses and present documentary evidence in his defense when to do so would not be unduly hazardous to institutional safety or correctional goals, and (iii) provide a written statement of the hearing officer as to the evidence relied upon and the reasons for the disciplinary action taken, presented in individual cases.

 Michigan law allows the forfeiture of sentence credits for major misconduct. Such forfeiture may extend to "all or a portion of the disciplinary credits accumulated prior to the month in which the misconduct occurred." M.C.L. 800.33(5). Under Michigan law, forfeitures of sentence credits must be proportional "to the seriousness of the offense and the institu-

tional record of the offender." *Tessin v. Department of Corrections,* 197 Mich.App. 236, 243, 495 N.W.2d 397 (1992). Petitioner committed very serious misconduct by testing positive for illegal drugs and absconding from parole for about four years. Petitioner was given advance notice of the claim that he had absconded from parole supervision for about four years and tested positive for illegal drugs. Petitioner has not alleged that he was not allowed to present evidence to the warden concerning these matters. Petitioner was given a written statement of the reasons that he would not receive special good time sentence credits for the period from December 1990 through December 1998.[7] Petitioner was denied less than two years sentence credits after having absconded from parole for about four years. Therefore, assuming for the sake of argument that this was a forfeiture of previously accumulated sentence credits, it would not have violated Moore's constitutional right to due process of law, or constituted an abuse of discretion under Michigan's law of proportionate forfeiture.

Consequently, Moore's challenge to his denial of special good time sentence credits and the establishment of May 30, 2001, as both his regular good time and special good time maximum sentence date fails.

### III. Conclusion

This Court concludes that petitioner Moore is not entitled to habeas corpus relief under any of the claims set forth in the present petition. Petitioner has not shown that he is entitled to habeas corpus relief on his claim that he was denied a timely parole revocation hearing or that he was improperly denied or deprived of sentence credits.

7. Of course, Petitioner was not eligible to earn any sentence credits for time during which he was at large as a parole absconder.

Accordingly, **IT IS ORDERED** that petitioner's request for habeas corpus relief is **DENIED** and the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE. IT IS FURTHER ORDERED** that petitioner's motion for immediate consideration [docket # 22] is **GRANTED. IT IS FURTHER ORDERED** that petitioner's pending motions for declaratory judgment and production of documents [docket # 22] are **DENIED.**