*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

AARON ANTWAUN ROBINSON,

        Defendant-Appellant.

UNPUBLISHED
May 14, 2020

No. 335193
Genesee Circuit Court
LC No. 11-029956-FC

ON REMAND

Before: MURRAY, C.J., and K.F. KELLY and FORT HOOD, JJ.

PER CURIAM.

This matter returns to this Court by order of our Supreme Court for reconsideration of defendant's sentencing challenge in light of *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019), wherein our Supreme Court unequivocally concluded that, once a defendant is acquitted of a crime, it violates due process to sentence the defendant as if he or she committed that very same crime, *id*. at 630. We have also been instructed to "analyze: (1) whether defendant's argument pertaining to the consecutive nature of his sentences is outside the scope of the remand for 'resentencing'; and (2) if not, whether the trial court articulated an appropriate basis for imposing consecutive sentences." *People v Robinson*, 505 Mich 872 (2019). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Genesee County Prosecutor charged defendant with first-degree felony murder, second-degree murder, carjacking, armed robbery, first-degree home invasion, safe breaking, larceny of a firearm, receiving and concealing a firearm, and felony-firearm. The jury convicted defendant of first-degree home invasion, safe breaking, larceny of a firearm, receiving and concealing a firearm, and felony-firearm. The jury acquitted defendant of the remaining charges.

On October 28, 2013, defendant was sentenced to 144 to 240 months' imprisonment for the home invasion conviction, 140 to 360 months' imprisonment for the safe breaking conviction, 13 to 60 months' imprisonment for the larceny conviction, 24 to 120 months' imprisonment for the receiving and concealing conviction, and 2 years' imprisonment for the felony-firearm

-1-

conviction. The safe breaking, larceny, and receiving and concealing sentences were to run concurrently to one another and consecutively to the home invasion and felony-firearm sentences. The home invasion sentence was to run consecutively to the felony-firearm sentence. The trial court explained its imposition of consecutive sentencing for the home invasion sentence as follows:

> I think that's appropriate because I do think punishment is important in this particular case because this involved a death of an individual who had shown himself to [be a] . . . contributor to society. He had reached his . . . old age had reached retirement. And come home and to be killed in his own home by two individuals who were trying to rob him. This Court thinks that that's just totally egregious. It was totally unnecessary. I think that the factors that the prosecution has laid on the record as to why the Court should exceed the guidelines also justify running the home invasion consecutive to the other offenses in this case.

Defendant's 144-month minimum home invasion sentence exceeds the top end of the sentencing guidelines range of 57 to 95 months by 49 months. His 140-month minimum safe-breaking sentence exceeds the top end of the sentencing guidelines range of 43 to 86 months by 54 months.

Defendant appealed to this Court challenging the validity of both his convictions and sentences, and this Court affirmed the former. *People v Robinson*, unpublished per curiam opinion of the Court of Appeals, issued February 17, 2015 (Docket No. 319226), at 1. As pertains to defendant's sentences, defendant asserted that the trial court incorrectly scored Offense Variables 3, 10, 12, and 14, and failed to articulate substantial and compelling reasons to depart from the minimum sentencing guidelines range when imposing the upward departure sentences. This Court concluded that the trial court correctly scored defendant's offense variables, and that he articulated substantial and compelling reasons to deviate from the sentencing guidelines. *Id*. at 11-13, 16. However, this Court also concluded that the trial court failed to "specifically state how the extent of [defendant's] departure [sentence] was proportionate." *Id*. at 14-16. As a consequence, this Court remanded the case for "resentencing so that the trial court may articulate the justification for the extent of the departure from the recommended guidelines range." *Id*. at 1, 17. In so doing, this Court noted:

> When departing, the trial court *must* explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been." *Smith*, 482 Mich at 304 (emphasis added). Thus, while there is sufficient evidence to support a departure from the recommended guidelines, the matter must be remanded. Upon remand, the trial court shall articulate how its sentence was more proportionate than a sentence within the guidelines. [*Robinson*, unpub op at 16.]

Our Supreme Court denied defendant's application for leave to appeal. *People v Robinson*, 499 Mich 966 (2016).

The trial court convened remand proceedings on September 12, 2016. The proceedings opened with a discussion of whether *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), controlled and, thus, whether the guidelines in this matter were only advisory. The consensus reached by the parties and the judge was that *Lockridge* did apply and that the guidelines were now

advisory. Thereafter, the trial court listened to the parties' arguments and the allocution offered by defendant. The trial court then offered the following articulation of the reasoning underlying its decision to impose departure sentences:

> This offense was a very serious offense; and even though you may downplay your role in this, you were up to this to the top of your neck. You guys – you had – you knew the person because you either lived or were in close proximity to where the victim lived at. You had gone to his house the day before. The evidence clearly showed that you knew he had coins and other things in his home of value. I think you had gone over there to make a request for some items from him or for something from him. At that time, you had an opportunity to see what was in his home.
>
> You then, according to the evidence that I heard, went and got your friend, the one who pled to second degree murder for killing this man; and you both went back to his home and you broke into his home. You went in through an air conditioning – where he had an air conditioner on the side of his house. You removed that air conditioner, you and your co-defen—when I say you, both you together, entered into his home; and, while you're in his home, I think he showed up; and that was his mistake because he showed up at home. Now this was a man who was retired from the Sheriff's Deputy [sic]—but he wasn't a Sheriff's Deputy at the time. He was retired, enjoying his retirement, minding his own business. And you and your co-defendant went into his home; and not only did you rob him, but you murdered him. He was shot and killed.
>
> Now I'll be honest with you, I thought the jury was incorrect in not convicting you of murder. I can't even – sitting here today, for the life of me, see how they could not have convicted you of murder[.]
>
> * * *
>
> [T]here is no question you were in the house when the shooting occurred, all the evidence points to that. And it's no doubt that you were involved in the safebreaking that occurred. I think maybe even your fingerprints were on the safe that they found in there. No question that you took his truck because, as the—even the report says here, you were found the next day riding around in this truck with items from the house inside the truck; so it says he was located riding in the victim's vehicle, was found to have the victim's personal items in his possession. I think your girlfriend you were taking your girlfriend to the movies in this man's truck after you – after he had been killed, had gone to a party and had a party after this man was killed; and you're riding around in his truck.
>
> I've listened to everything you've said here and I haven't heard you once say you were sorry for what happened to the victim, not even once. All I've heard is woe is me, you—how you were mistreated in the system. This man is dead. His life was taken. His family will never see him again. His property was taken . . .[.]

Now your co-defendant was the better man than you in my opinion, 'cause at least he came forward and admitted what he did and pled guilty to what he did; and then he testified about what your role was in it; and it was clear what your role was. There's no question about that, what the evidence showed.

* * *

When I sent you to prison last time, I sent you to prison because I looked at the totality of the circumstances irregardless of what the jury convicted you of; and I had the right to look at the totality of the circumstances. And what were the circumstances? This man's house was broken into; he was retired, enjoying his life; and you and your co-defendant went in there and when you all – by the time you left, this man was dead. So I had a right to consider that.

* * *

Your offense score was a hundred and eighty; that would be more than double what the maximum is on the offense score. That just shows you how egregious this incident you were involved in was. But what really got me is when you were riding around in this man's car, having a good time, taking your girlfriend to the movie in his vehicle after he—after he's dead, that to me was just a little bit much with his property in the back of the vehicle. That was a little bit much. And there's some other details that I'm sure I'm forgetting right now that I certainly pointed out at the time of sentencing that gave me great concern about you, not to mention your manipulative behavior and your unwillingness to take any responsibility for what you did.

In fact, when I heard you today, you basically said the co-defendant came in here and testified and told a lie because he was pressured. In other words, you were basically saying the system forced the co-defendant to take a plea bargain and testify against you; that's what I heard you say today, which again shows me no willingness whatsoever to take responsibility for what you've done, which is, in my opinion, something the Court can consider because to me it has an impact on whether you're more likely to do the same thing again.

And, by the way, I was also convinced, from all the evidence that I heard, that the co-defendant was not the leader in this situation; you were, you know. . . .

And Ms. McLaren [the prosecutor] has already pointed out that, in the report, it reflects that you had done the same thing just previously to doing this one. You had done a home invasion so it wasn't the first time for you. So it's no doubt in my mind you're the mastermind, which was another thing that I took into consideration.

I would note that, since you've been incarcerated, they indicate that you have twenty-five major misconducts. Let's see, you've been found guilty to ten out-of-place bounds, two disobeying a direct order, one possession of forged papers, which I'm not surprised—six interfering with the administration of the

-4-

rules, one substance use, one alcohol use and two theft – thefts of property. So you have twenty-five misconducts while in prison, while incarcerated; so I question whether or not you still have learned anything even while you've been incarcerated.

Is this sentence reasonable? Yes. The sentence of a hundred forty-four months on the Home Invasion . . . plus a hundred and forty on the Safebreaking was a gift for somebody who took this man's life[.]

* * *

Again, I think the jury made a mistake in not sent—in not convicting you, but that's the jury's mistake, all right. But, when I look at the circumstances, this man was killed and you were part of it; you were involved in it. You were the ringleader; your were the mastermind. And so, when I look at the circumstances, yes, I think a hundred forty-four months and a hundred forty months was a gift to you. I was—because if somebody takes your life, Mr. Robinson, and they come in front of me, I'm gonna make sure that they—that they pay a price for it. To me, that's what I call justice. I don't know what you call justice, but I call justice a person paying a price for what they've done. And you committed a Home Invasion; you did a Safebreaking; and you were the mastermind behind all of this; and if you had not been the one to mastermind this, your co-defendant would not have killed this man. This man would still be alive.

So again, when I look at your offense score of a hundred and eighty on the Offense Variable as double of what the, uh—the maximum is, the top of the guidelines would have been eighty-six months. That actually would have come out to a hundred and seventy-something months. So, actually, I gave you less than what the offense score in my opinion would have dictated.

Is it proportionate? Yes, because, in this circumstance, a man lost his life. Is it reasonable? Yes, because in this circumstance a man lost his life. Now you weren't convicted of killing him, but you definitely were convicted of being involved in the incident that involved his death; and that's what you don't quite get. In fact, you were the mastermind. And not only were you the mastermind, but you drove around in his vehicle in broad daylight with all his property in the back, which to me is just—it's just a little bit much. So, yes, justice does require, in my opinion, that you serve a significant prison term. That's what you deserve in my opinion. And, if someone had done this to you, I would feel they deserve the same. So I try to be fair; and that means fair to you and fair to everyone else.

So taking into consideration the misconducts that he's had in prison, taking into consideration the circumstances, I do believe that imposing the same sentence is the appropriate thing to do.

Immediately thereafter, Judge Hayman resentenced defendant and imposed the same sentences as originally imposed.

Defendant appealed a second time, asserting that the departure sentences for his first-degree home invasion and safe-breaking convictions were disproportionate and therefore unreasonable. This Court rejected defendant's arguments and affirmed his sentences. *People v Robinson*, unpublished per curiam opinion of the Court of Appeals, issued December 28, 2017 (Docket No. 335193), 2-4. Defendant then sought leave to appeal to our Supreme Court, and by an order entered on November 27, 2019, our Supreme Court vacated that decision and remanded. *Robinson*, 505 Mich 872. As previously noted, we must now reconsider defendant's sentences "in light of *Beck*," and "analyze: (1) whether defendant's argument pertaining to the consecutive nature of his sentences is outside the scope of the remand for 'resentencing'; and (2) if not, whether the trial court articulated an appropriate basis for imposing consecutive sentences." *Id*.

We conclude that the departure sentences imposed by the trial court do not violate the rule announced in *Beck*, and that the trial court articulated an appropriate basis for imposing consecutive sentences. Consequently, we once again affirm.

## II. DEFENDANT'S ACQUITTED CONDUCT

First, the trial court did not violate *Beck* by sentencing defendant as though he was guilty of conduct for which he had been acquitted.

In *Beck*, a jury convicted the defendant of felon in possession of a firearm and of felony-firearm, second offense. *Beck*, 504 Mich at 610. The jury acquitted the defendant of open murder and two additional counts of felony-firearm. *Id*. Although the sentencing guidelines range for the felon-in-possession conviction was 22 to 76 months, defendant was sentenced to 240 to 400 months' imprisonment to run consecutively to the mandatory 5-year term for the second-offense felony-firearm conviction. *Id*. The trial court imposed the departure sentence, in part, in reliance on its determination that the defendant had committed a murder of which the jury had acquitted him. *Id*.

The defendant appealed to this Court and argued, in part, that the trial court's reliance on conduct of which he was acquitted to increase his sentence length violated his constitutional rights under the Sixth and Fourteenth Amendments of the United States Constitution, and this Court remanded the matter to the circuit court for a *Crosby* remand proceeding under *People v Steanhouse*, 313 Mich App 1; 880 NW2d 297 (2015), aff'd in part and rev'd in part by *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017). The defendant, in turn, sought leave to appeal to our Supreme Court, which ultimately concluded that, once a defendant is acquitted of a crime,[1] it violates due process to sentence the defendant as if he or she committed that very same crime. *Beck*, 504 Mich at 630. The Court elaborated:

> When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-

---

[1] For purposes of *Beck*, the Court defined the term "acquitted conduct" as conduct that "has been formally charged and specifically adjudicated by a jury." *Beck*, 504 Mich at 620.

evidence standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. "To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." [*State v*] *Marley*, 321 NC [415,] at 425[; 364 SE2d 133 (1988)].

Unlike the uncharged conduct in [*McMillan v Pennsylvania*, 477 US 79; 106 S Ct 2411; 91 L Ed 2d 67 (1986), overruled by *Alleyne v United States*, 570 US 99, 112; 133 S Ct 2151; 186 L Ed 2d 314 (2013)], conduct that is protected by the presumption of innocence may not be evaluated using the preponderance-of-the-evidence standard without violating due process. [*Beck*, 504 Mich at 626-627 (footnotes omitted).]

The Court then concluded that the trial court had "punished the defendant more severely on the basis of the judge's finding by a preponderance of the evidence that the defendant committed the murder of which the jury had acquitted him." *Id*. at 629. As a consequence, the Court reversed this Court's decision, vacated the defendant's sentence for his felon-in-possession conviction, and remanded the case to the trial court for resentencing. *Beck*, 504 Mich at 629-630.

In summation, pursuant to *Beck*, once a defendant is acquitted of a given crime, it violates due process to sentence the defendant using an essential element of the acquitted offense as an aggravating factor. *Beck*, 504 Mich at 627. It is also true, however, that a trial judge can consider conduct underlying an acquittal as an aggravating factor without turning that consideration into an independent finding of guilt. *People v Shavers*, 448 Mich 389, 393; 531 NW2d 165 (1995).

In *Shavers*, the defendant was charged with murder but convicted of voluntary manslaughter, and at sentencing, the trial court imposed a departure sentence after concluding that the defendant's crime had been particularly "cold blooded," and that the defendant would "kill again." *Id*. at 392. On appeal, we reversed, concluding that, as a result of the comments, the trial court deprived the defendant of due process and "placed [him] in double jeopardy." *Id*. Writing in dissent, Judge MURPHY noted:

In my opinion, the court gave ample reasons for the guideline departure and for what the court considered to be an appropriate sentence in view of the fact that the victim was shot in the back five times, was unarmed and completely defenseless. This sentence, in my opinion, does not violate the principle of proportionality . . . .

Additionally, in my view, the court did not make an independent finding of defendant's guilt of first-degree murder by referring to his actions as cold-blooded, but, rather, the court considered the evidence admitted at trial as an aggravating factor in determining the appropriate sentence. See *People v Fleming*, 428 Mich 408, 418; 410 NW2d 266 (1987); *People v Purcell*, 174 Mich App 126, 130; 435 NW2d 782 (1989). Further, the court's comment regarding defendant repeating the act, in my opinion, is no more than the court's method of verbalizing its view that

society must be protected. [*Id*. at 393, quoting *People v Shavers*, unpublished per curiam opinion of the Court of Appeals, issued February 24, 1994 (Docket No. 122523) (MURPHY, J., dissenting).]

Our Supreme Court adopted Judge MURPHY's reasoning, noting:

> It is not disproportionate to impose a ten-year minimum sentence for manslaughter, where an unarmed victim was repeatedly shot in the back. Neither is there any basis for the conclusion that the sentencing judge improperly found that the defendant was actually guilty of first-degree murder. As indicated by Judge Murphy, the sentencing judge was making permissible inferences from the evidence introduced at trial. [*Shavers*, 448 Mich at 393.]

*Beck* contains no express overruling of the rule enunciated in *Shavers*. Thus, the question presented by this appeal is: On which side of the fine line that separates these two legal rules does the trial court's action fall? We conclude this case is more akin to *Shavers*.

In our previous opinion, we expressly rejected defendant's assertion that the trial court in this case erroneously relied upon its personal belief that defendant was guilty of offenses of which the jury had acquitted him as an aggravating factor that supported the departure sentences imposed. We opined:

> [W]hile a trial court "may not make an independent finding of guilt with respect to a crime for which a defendant has been acquitted, and then sentence the defendant on the basis of that finding, the court in fashioning an appropriate sentence may consider evidence offered at trial[.]" *People v Compagnari*, 233 Mich App 233, 236; 590 NW2d 302 (1998) (citation omitted). Such evidence may include "other criminal activities established even though the defendant was acquitted of the charges[.]" *Id*. (Citation omitted). While the trial court did state its disagreement with the jury's verdict, our review of the record confirms that the trial court's considered all of the evidence offered at trial in formulating and justifying its departure sentences, and there is no indication from the record that the trial court sentenced defendant on the basis of independent conclusions of guilt for crimes of which the jury acquitted him. [*Robinson*, unpub op at 4 (footnote omitted).]

This Court's prior ruling is consistent with *Beck* and *Shavers*, and supported by the trial court's sentencing articulation as a whole. A review of the trial court's sentencing articulation reveals that the court neither expressly nor impliedly used an essential element of the acquitted murder offense as an aggravating factor. Instead, the court relied on the conduct underlying both the conviction offenses and acquitted offenses as an aggravating factor, i.e., defendant's role in setting into motion the events leading to the shooting death of the returning homeowner. *Beck* does not bar the trial court from relying on such underlying events as an aggravating sentencing factor. Moreover, the fact that the homeowner was shot and killed during the home invasion significantly elevates the severity of the offense above the average home invasion offense, as correctly recognized by the trial court.

## III. CONSECUTIVE SENTENCING

Our Supreme Court has also tasked this Court with determining "whether defendant's argument pertaining to the consecutive nature of his sentences is outside the scope of the remand for 'resentencing.' " We conclude that defendant's argument is within the scope of the remand for "resentencing," but discern no error from the trial court's imposition of consecutive sentences.

With respect to the scope of the remand, "[w]hen a case is remanded by an appellate court, proceedings on remand are limited to the scope of the remand order." *People v Canter*, 197 Mich App 550, 567; 496 NW2d 336 (1992). As a consequence of defendant's first appeal, this Court expressly remanded this matter for "resentencing." *People v Robinson*, unpublished per curiam opinion of the Court of Appeals, issued February 17, 2015 (Docket No. 319226), at 1, 17. The scope of the second appeal, such as this appeal, is limited by the scope of the remand. *People v Jones*, 394 Mich 434, 435-436; 231 NW2d 649 (1975). When a defendant is resentenced on remand, the "second appeal shall be concerned only with matters which arose at resentencing." *Id*. at 436. Notably, however, remanding a case for "resentencing" returns "the case to the trial court in a presentence posture, allowing the trial court to consider every aspect of defendant's sentences de novo," *People v Lampe*, 327 Mich App 104, 112; 933 NW2d 314 (2019), which in turn allows "for objection to any part of the new sentence," *People v Rosenberg*, 477 Mich 1076, 1076; 729 NW2d 222 (2007).

In the present matter, the trial court resentenced defendant on remand and imposed the same sentences as he imposed at defendant's first sentencing, including a consecutive sentence for the home invasion conviction. The trial court's decision to impose the consecutive sentence a second time should not have been impacted by defendant's previously vacated sentence, but instead by a de novo review of the case. See *Lampe*, 327 Mich App at 112. Thus, because the judge imposed a consecutive sentence on resentencing, and because defendant is permitted to object to any part of the new sentence, *Rosenberg*, 477 Mich at 1076, defendant's challenge to that consecutive sentence is properly before this Court for plenary review and resolution, *Jones*, 394 Mich at 435-436.

With respect to whether consecutive sentencing was proper in this case, "[i]n Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (citation and quotation marks omitted). MCL 750.110a(8) provides that "[t]he court may order a term of imprisonment imposed for home invasion in the first degree to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction." "[T]he decision to impose a consecutive sentence when not mandated by statute is reviewable for an abuse of discretion." *People v Norfleet*, 317 Mich App 649, 664; 897 NW2d 195 (2016). To aid appellate review, a sentencing judge must articulate his or her rationale for the imposition of each discretionary consecutive sentence. *Id*. at 665. "[R]equiring trial courts to justify each consecutive sentence imposed will help ensure that the 'strong medicine' of consecutive sentences is reserved for those situations in which so drastic a deviation from the norm is justified." *Id*.

In the instant matter, the trial court noted both at defendant's original sentencing and at defendant's resentencing that he was exercising his discretion to impose the home invasion sentence as a consecutive sentence for the same reasons that he was departing from the sentencing

guidelines. He expressly stated so at defendant's original sentencing, and his application of the same reasoning may be reasonably inferred from his statements on resentencing. We can think of no more drastic deviation from the norm of home invasions than a home invasion that results in the death of a homeowner. And, although defendant did not shoot and kill the homeowner in this case, he did set into motion and participate in the events that culminated in the killing of the homeowner. Under these circumstances, the trial court did not abuse his discretion by imposing consecutive sentences.

Affirmed.

/s/ Christopher M. Murray
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood